1806.

FINDLEY
*v.*
ADAMS.

The plaintiff replied, that the defendant had taxes on the same list against forty-five other non-residents, whose names were included with the plaintiff's in the same advertisements, and who were liable to pay their respective proportions of the costs.

There was then a demurrer, and joinder.

The justice adjudged the replication sufficient ; and gave judgment for the plaintiff to recover sixteen cents.

On a writ of error to the Superior Court, that judgment was affirmed.

*Peters,* (of Hebron,) for the plaintiff in error.

*Gould,* for the defendant in error.

BY THE COURT,

The judgment was affirmed.


## Phelps *v.* Landon.

### In the Court below,

JOHN R. LANDON, *Plaintiff;* NOAH PHELPS, NOAH A. PHEPLS, and JONATHAN HUMPHREY, *Defendants.*

A writ of error allowed and signed, is not, before service, a *supersedeas* of execution.

THE plaintiff declared, that on the 28th of February, 1804, he, as deputy-sheriff, had in his custody certain goods, which he had taken to satisfy an execution in his hands in

Nor will the service of a writ of error, after seizure of goods, prevent the officer from completing execution thus begun.

The reversal of the judgment on which an execution issued will not bar an action, in favour of an officer, on a receipt of property taken on such execution ; and if that property, before action brought, has been restored to the original owner, the rule of damages will be the amount of the officer's fees.

favour of *Thomas S. Sill* against *Noah Phelps*, one of the defendants ; that, at the special instance and request of the defendants, he delivered the goods into their custody, who thereupon executed to the plaintiff a writing, dated said 28th of February, acknowledging the receipt thereof, and promising to re-deliver the same to the plaintiff, at the public sign-post, on the 19th of March following ; and that they neglected to perform that promise, &c.

The defendants pleaded, that " the said *Noah Phelps* pray-" ed out a writ of error, in due form of law, dated the 27th " day of February aforesaid, signed by *David Daggett*, as-" sistant, returnable to the Supreme Court of errors," for the reversal of the judgment, on which said execution issued ; that such writ was duly served on *Sill*, and a copy left with the plaintiff, on the 15th of March ; and that before the commencement of this action, said judgment was reversed. It was also averred in the plea, that the goods taken were the property of *Noah Phelps*, and that, at the time, of executing the receipt, they were delivered to him, and had ever since remained in his possession.

To this plea there was a demurrer.

The Superior Court adjudged the plea insufficient, and rendered judgment in favour of the plaintiff for the amount of his fees on the execution.

*Allen* and *Bacon*, for the plaintiffs in error, considered,

1. The effect of the *allowance* of a writ of error upon an execution not executed. The facts in the case, material to this point, are : That the defendant in error, as a deputy-sheriff, held an execution against *N. Phelps*, one of the plaintiffs in error. Before the execution had been levied, *Phelps* sued out a writ of error upon the judgment, on which the execution issued. That writ of error was allowed, and signed, and bonds given to prosecute it to effect, on the 27th

1806.

PHELPS
*v.*
LANDON.

of February, 1804. On the 28th of February, the defendant levied the execution upon the goods of *Phelps*.

It has often been contended, that a writ of error, before it is served, is not a *supersedeas* to an execution ; but it has been uniformly decided, that it is a *supersedeas* from the allowance. (*a*) As a writ error is a *supersedeas* from the *allowance*, the levy of the execution was irregular, and void : and the defendant, by the levy, acquired no right to the goods. This principle is recognized in *Cotton* v. *Daintry*, where the sheriff was directed to bring the money into court, and not pay it to the plaintiff. Upon the same principle, the court awarded restitution in the cases of *Smith* v. *Cave*, (*b*) and *Moorfoot* v. *Chivers*. (*c*) In the case of *Meagher* v. *Vandyck*, (*d*) the sheriff, by virtue of an execution, took the goods of the defendant, after the allowance, but before service as notice of the writ of error. Upon looking into the authorities, the court decided, that the writ of error must be deemed a *supersedeas* from the time of the allowance ; that the levy of the execution was, therefore, irregular ; and awarded restitution of the goods to the defendant.

If these authorities are recognized by the Court, there is an end of this case. The levy of the execution by the defendant in error, and all consequent proceedings, are void.

The allowance of a writ of error ties the hands of the sheriff ; he can do nothing with his execution afterwards, except to complete a levy begun before. He cannot even return a *non est inventus* to lay a foundation for a *scire-facias* against the bail. (*e*)

If the defendant in error had retained in his own hands,

(*a*) 1 *Mod.* 28, *Hughes* v. *Underwood*. 1 *Salk.* 321, *Perkins Woolaston*. 1 *Vent.* 30, *Cotton* v. *Daintry*.
(*b*) 3 *Lev.* 313.     (*c*) 8 *Mod.* 373.     (*d*) 2 *Bos. & Pul.* 370.
(*e*) 2 *Stra.* 1186, *Smith* v. *Nicholson*. 3 *Term Rep.* 390, *Perry* v. *Campbell*.

the goods on which he levied the execution, the court would have compelled him to restore them to the plaintiffs in error. The defendant restored the goods without an order from the court; but at the same time, took from the plaintiffs a receipt for the goods, in which they agreed to deliver them to the defendant, on a future day: and this is the agreement, on which the defendant commenced his action, in the court below. But this agreement is without consideration. The plaintiffs were entitled to a restitution of their goods without terms. It was the duty of the defendant to restore them; and the plaintiffs executed the receipt to induce the defendant to do his duty; but it is settled law, that an obligation made to induce a party to do his duty will not support an action.

No evil can arise from considering a writ of error a *supersedeas* from the allowance; for our statute requires, " that the authority signing any writ of error shall take good " and sufficient bond with surety, that the plaintiff in error " shall prosecute his writ to effect, and answer all damages, " if he fail to make his plea good." ( *f* )

2. The reversal of a judgment is a bar to all acts executory, which depend directly, or collaterally, upon the judgment. The execution, which the defendant held, was but a command to him to satisfy the judgment on which it issued. For this purpose, he levied the execution upon the plaintiffs' goods. They executed to him a receipt for them, and engaged to re-deliver them. For what purpose were the plaintiffs to deliver the goods to the defendant? For the same purpose, for which he originally took them; to enable him to satisfy the judgment. But that judgment has been reversed. The purpose, for which the receipt was given, has wholly failed. At the date of the defendant's writ, he held the execution, and the receipt. The execution had *then* become a nullity, by the reversal of the judgment on which it issued. The defendant had *then* no right to execute it; and

( *f* ) *Stat.* 162, *edit.* 1796.

1806.

PHELPS
*v.*
LANDON.

1806.

RHELPS
v.
LANDON.

no right to demand the goods for that purpose. In his indi-
vidual capacity, the defendant had no right to the goods ; as
a sheriff, he had no right to them for any other purpose than
to satisfy the judgment : and by the reversal of the judg-
ment, his right was determined.

The origin of the defendant's right, and the origin of the
plaintiffs' liability, shew, that both were determined by the
reversal of the judgment. The defendant's original right to
take the goods, his right to the receipt for them, and his
right to demand them upon the receipt, vested exclusively
upon the judgment : and so did the plaintiffs' liability. It is
true, that in the court below, the defendant brought his action
upon the receipt ; but that receipt grew out of the judgment,
and is dependent upon it. And the question is, whether the
reversal of the judgment is a bar to the action on the re-
ceipt, which is predicated upon the judgment ? The rule is
thus laid down in *Drury's* case : (g) " A difference was taken
" and agreed between a thing collateral executory, and exe-
" cuted : for when an erroneous judgment is given, and af-
" terwards the judgment is reversed by a writ of error, col-
" lateral acts executory are barred thereby." The agree-
ment of the plaintiffs to re-deliver the goods, which were
taken to satisfy the judgment, is a collateral act executory ;
and falls directly within the rule.

When an action is brought upon a collateral act, which is
dependent upon a judgment, and the judgment is reversed,
before the defendant is obliged to plead, he may plead
the reversal in bar : as upon a *scire-facias* against the
bail, and an action against the sheriff for an escape, and, as
in the present case, an action against the receipts-men,
for not delivering the goods to satisfy the judgment. For,
as to such collateral things, when the judgment has
been reversed, they are as if no judgment had ever been.
But, if the judgment is reversed, after the defendant is
obliged to plead, and judgment is rendered against him,

(g) 8 Co. 142.

he shall be relieved by *audita querela.* (*h*) If the plaintiffs could not have pleaded the reversal in bar, they are remediless ; they cannot be relieved by *audita querela ;* for the judgment was reversed before they were obliged to plead.

If judgment is rendered for the plaintiff in an action of debt on judgment, and the first judgment is reversed, the second is thereby defeated. (*i*) So, if the plaintiff recovers judgment upon a *scire-facias*, and the first judgment is reversed, the second is also reversed. (*k*) Why is the second judgment defeated by the reversal of the first ? Because the foundation, on which it rests, is destroyed. So, too, in the present case, the receipt rests upon the first judgment, and must fall with it.

The words of our statute are, that " upon the reversal of " an erroneous judgment, *the plaintiff shall recover all that he* " *hath been damnified thereby*." But if the judgment against the plaintiffs is affirmed, they will be damnified by the erroneous judgment, which has been reversed, without a possibility of redress.

In the court below, the fees of the defendant [the sheriff] for levying the execution, were taken for the rule of damages. But upon what principle of law can the plaintiffs in error be made liable for the costs or expenses of a void judgment ? If the defendant had sold the goods to a stranger before the writ of error, and reversal ; the plaintiffs, upon the reversal, would have been entitled to every cent of the money, for which the goods were sold, or to the value of the goods. (*l*) In the cases cited, the sheriff had not only levied the execution, but had actually sold the goods ; and yet there is no pretension, that any part of the money could be retained for the

(*h*) *Cro. Jac.* 645, *Appesley & al.* v. *Ive.* 8 *Co.* 143*b*, *Drury's case.*

(*i*) 1 *Sid.* 253. *Palm.* 303. (*k*) *Rol. Abr.* 777.

(*l*) 8 *Co.* 96, *Matthew Manning's case.* 3 *Salk.* 214, *Western* v. *Creswick. S. C.* 4 *Mod,* 161. *S. P.* 2 *Salk.* 588.

1806.

PHELPS
v.
LANDON.

sheriff's fees. This is the first time, that such a claim was ever made.

The effect of a reversal of a judgment is to place the parties in *statu quo*. (*m*) Upon this principle, if the goods had remained in the hands of the sheriff, or had been delivered to the first plaintiff *per rationabile pretium et extentum*, they would have been restored to the plaintiffs in error, upon the reversal. (*n*) No part of the goods could have been retained for the sheriff's fees.

The rule adopted by the court below, is against every principle of the common law, and is a violation of the letter and the spirit of our statute, which says, that upon the reversal of an erroneous judgment *the plaintiff shall recover all that he hath been damnified thereby.*

*Gould,* for the defendant in error.

The action is barred, if at all, either—1. by the suing out of the writ of error, in the case of *Sill* v. *Phelps ;* or—2. by the service of that writ ; or—3. by the judgment of reversal.

1. The rule in *England* certainly is, that the *allowance* of a writ of error, before execution begun, operates as a *supersedeas*, if bail is put in within the period limited for that purpose. But no such rule does, or can, exist in Connecticut. The allowance of the writ, according to the English practice, is a proceeding wholly unknown in our law. Here, a writ of error is issued and served, as an *original* writ ; and the defendant in error has no notice of it, but by service. In *England*, the writ is directed to the chief justice of the court below ; the allowance is the act of *that court ;* and is itself *notice*, for every purpose, except that of bringing the defendant in error, and the sheriff, into contempt. (*o*)

(*m*) 1 *Salk.* 403, *Philips* v. *Berry.*
(*n*) *Goodyere* v. *Ince. Cro. Jac.* 246. *S. P. Rol. Abr.* 778.
(*o*) 1 *Salk.* 321, *Perkins* v. *Woolaston.* S. P. per WILLES, Ch. J. *Willes* 277. 1 *Term Rep.* 279, *Jaques* v. *Nixon.*

It is obvious, then, that the *English* rule admits of no application here, otherwise than by *analogy*. But the analogy it affords, is directly opposed to the argument, which it was introduced to support : for the *very reason*, why a writ of error operates, in *England*, as a *supersedeas* from the allowance, is, that the *allowance itself is notice*. This is abundantly clear from all the cases. (*p*) The fallacy of the argument consists in comparing the *issuing* of the writ here, with the allowance in *England*. But no two things are more unlike. It cannot be contended, that the issuing of a writ of error, in this state, (the secret act of a single judge) is *notice*, actual or constructive, to the sheriff, or to the defendant. *Service* of the writ, and that only, has the same effect here, as the allowance has in *England*. But in this case, the writ of error was not served, till *after* execution was begun, by seizure of the goods.

2. The question, then arises, whether the action is barred by *service* of the writ of error, after seizure, and before sale, of the property ? If the allowance of the writ in *England*, has the same effect in superseding the execution, as service has here, (and this, it is conceived, has been shewn) the question is at rest, as well according to *English* authorities, as our own : There is, perhaps, no legal proposition better established by the former, than that, *after* seizure of goods, upon a *fi. fa.* neither the allowance of a writ of error, nor even an *express supersedeas*, can prevent the sheriff from completing execution, thus begun : And in either case, if he neglects to sell the goods, a *venditioni exponas* may be awarded, to compel the sale. These points are fully settled by the cases of *Charter* v. *Peeter*, (*q*) *Tocock* v. *Honeyman*, (*r*) *Baker* v. *Bulstrode*, (*s*) *Regina* v. *Nash*, (*t*) *Clerk* v. *Withers*, (*u*) *Meriton* v. *Stevens*, (*v*) and many others. A case in 2 *Rol.*

(*p*) 1 *Vent.* 255, *Baker* v. *Bulstrode. Perkins* v. *Woolaston*, *supra. Willes* 271, *Meriton* v. *Stevens.*

(*q*) *Cro. Eliz.* 597.  (*r*) *Yelv.* 6.
(*s*) 1 *Vent.* 255.  (*t*) 1 *Salk.* 147.  S. C. *Ld. Ray.* 989.
(*u*) 1 *Salk.* 323.  (*v*) *Willes* 271.

A a a

*Abr.* 491, and the only one to be found, in which a contrary rule is laid down, is contradicted by all the other cases on the subject, both ancient and modern, and in *Meriton* v. *Stevens*, is denied to be law. But the precise question under discussion, is settled, at any rate, by the decisions of our own courts. (*w*)

3. The only remaining question is, Whether the action is barred by the *reversal* of the *judgment*, in the case of *Sill* and *Phelps* ? The provision of our statute, that " if the judg-" ment complained of is erroneous," the plaintiff in error " shall recover all, that he hath been damnified thereby," relates merely to the *judgment*, which he shall recover in the court above, and holds only as between the *parties* to the writ of error. Besides, as the property was delivered by the sheriff, to the plaintiffs in error, in consideration of their agreement to re-deliver it, before the judgment was, or could, by possibility, be, reversed ; his right, as against *them*, so far at least, as respects his lien for fees, is the same, as if the property had been actually re-delivered, and sold, before the reversal : In which case, it is admitted, he might have retained his fees. This is also a sufficient answer to the rule, cited from *Phillips* v. *Berry*, (*x*) which, in its very terms, respects the *parties* only.

The cases, already cited, prove incontestibly, that the defendant in error, by the act of seizing the property, before service of the former writ of error, not only acquired a right, but was bound, to proceed in executing the writ of execution. They prove, of course, that he *then* had a right to levy his fees out of the property. This is too clear to require or admit of argument. The question, therefore, is, whether the reversal of the judgment, on which the execution issued, *divested* that right ? All the remaining grounds of argument in support of the affirmative of the question, may be resolved into the rule in *Drury's* case, that " when " an erroneous judgment is given, and afterwards the judg-

(*w*) 1 *Root* 563.                    (*x*) 1 *Salk.* 402.

" ment is reversed by writ of error, collateral acts executory
" are barred thereby." But that rule applies only in cases,
in which the first judgment is of the *gist* of the second ac-
tion ; as in the instances given of an action against the
sheriff for an escape, debt on judgment, and *sci. fa.* In
these cases, say the court, " the second action is gone ; FOR
" he (the defendant) may plead *nul tiel record*, BECAUSE, *with-*
" *out a record* the action is not maintainable." The meaning
of the rule, then, is manifestly this : That the reversal of
the erroneous judgment is a good bar, and *nul tiel record,*
of course, a good plea, in those cases, and in those only, in
which it is necessary for the plaintiff in the second action
to *plead* the first judgment : For he can plead it only while
it remains in force. Will it, then, be contended, that *nul
tiel record* would have been a good plea in the principal
case ? It would clearly have been frivolous ; for we have not
pleaded the first judgment. But if the action depended up-
on that judgment ; or, in the language of the Court in *Dru-
ry's* case, if it was not " maintainable without the record"
of the prior judgment ; we ought to have pleaded it, and to
have alleged, that it was still in force. Is the declaration,
then, ill, by reason of this omission ? This is not pretend-
ed ; and in the case of *Hartshorn* v. *Halsey,* (*y*) the contrary
was expressly decided, upon demurrer. That case is de-
cisive, that the first judgment is not of the *gist* of the action :
For the omission of *that* is, in all cases, an incurable defect.

The rule in *Drury's* case proves, merely, that an errone-
ous judgment cannot, after reversal, be made the *foundation*
of an action. But in the present case, the action is founded,
not on the first judgment, but on the written *contract.* That
judgment, or rather, the writ of execution and the proceed-
ings under it, were mere *inducement* to the contract. The
rule in question is, therefore, inapplicable. The defendant
in error acquired, by the seizure, a *lien* for his fees, which
was not dependent on the rights of the parties to the first
judgment, and which they could not discharge. The offi-
cial services, performed by him, in commencing execution,

(*y*) 1 *Root* 92.

constitute a new, distinct, and sufficient *res gesta*, on which to support an action, founded upon the contract: As in *Wiliams* v. *Lefter*, (z) the relinquishment of a lien, by a landlord, was holden sufficient to support an action of *assumpsit*, upon a parol promise, by a stranger, to pay the rent.

It is not correct to say, that the lien was only an *appendage* to *Sill's* right under the first judgment, and therefore, destroyed with it. So far, indeed, as the defendant in error would have availed himself of the lien, after the judgment of reversal, for the purpose of *enforcing* the *original* judgment, in *Sill's favour*, relief might have been had against him: But for the purpose of securing his *own fees*, the lien would have remained good. If a thief delivers stolen goods to a common carrier, for transportation; the latter may retain them, for *his reward*, even against the true owner (though in support of the pretended right of the thief, he certainly could not) for he is compellable by law to receive them, as, in the present case, the sheriff was to seize the goods. The law is the same, as to an inn-keeper. *Yorke* v. *Grenaugh.* (a) This lien the sheriff relinquished, in consideration of an agreement by the plaintiffs in error to indemnify him. Why should they not be bound by their contract?

The grounds of the sheriff's claim may be presented, in one view, by three plain propositions: 1. If he had actually sold the property on the execution, he might have retained his fees out of the avails, forever, and against all the world. 2. He not only had a right, but in legal strictness, was bound, to sell it, notwithstanding the service of the writ of error. 3. If the plaintiffs in error had not violated their contract, by refusing to re-deliver the property, he would have sold it, and thus have satisfied his fees.—It cannot be contended, that they shall acquire, by their own voluntary breach of contract, an advantage, which could not *otherwise* be claimed.

BY THE COURT,

The judgment was affirmed.

(z) 3 *Burr.* 1886.          (a) *Ld. Ray.* 866.