## FERGUSON *vs.* LEE.

The *removal* of an *under sheriff* from the county in which he holds the office, is a *virtual resignation* of his office, and he is thereby disqualified from even completing an execution begun by him previous to his removal.

Personal property pledged by way of mortgage, may, after forfeiture, be levied upon by virtue of an execution against the *mortgagee*, although it remains in the hands of the *mortgagor*.

ERROR from the Herkimer common pleas. Stephen Lee sued James G. Ferguson in a justice's court, in an action of *trespass*, for taking several articles of household furniture; the defendant pleaded a former recovery and property in himself. On the trial of the cause the following facts appeared: In August, 1828, one E. Gorton executed a mortgage to one *Crandall Lee*, of certain personal property, comprising the furniture declared for, one cow, four hogs, and various other articles, conditioned for the payment of $59,95, on the 1st December, 1828. Subsequently, in June, 1829, the time of payment was extended to 1st September, 1829. In December, 1828, S. Haddock, *under sheriff* of the county of Herkimer, by virtue of an execution in favor of Ferguson against *Crandall Lee*, levied on the property mortgaged by Gorton, then being

in the possession of Gorton. In May, 1829, the under sheriff *removed* from the county of Herkimer to the county of Oneida, where he continued to reside on the 19th October, 1829, when he went with Ferguson to find and sell the property levied upon by him. On the same day an agent of *Crandall Lee* sold the property which had been levied on by the under sheriff to *Stephen Lee*, the plaintiff in this cause. Haddock found the furniture at the house of one Harvey, the cow in possession of Gorton, and the hogs in the woods, and drove away the cow and two of the hogs. On the next day the plaintiff commenced a suit against Ferguson for the taking of the same, in which suit he subsequently recovered a judgment for $26. On the 21st October Haddock advertised the furniture, and on the 27th October sold it at public vendue, it then being in the possession of the plaintiff, who told Haddock that he knew of the levy upon the property while in the hands of Gorton, but that he, Haddock, had no right to sell, in consequence of having removed from the county, and forbade his selling. The plaintiff then commenced a second suit against Ferguson in a justice's court, for the selling of the furniture, and obtained judgment for $10. Ferguson sued out a *certiorari* to the common pleas of Herkimer, which court having affirmed the judgment of the justice, he sued out a writ of error to this court.

*A. Hackley & J. A. Spencer,* for plaintiff in error.

*L. Ford,* for defendant in error.

*By the Court,* SAVAGE, Ch. J. Both the plaintiff and defendant make title to the property in question through Crandall Lee. C. Lee had a mortgage upon the property, which became absolute on the 1st December, 1828. The property therefore became his on that day, as the mortgage was then forfeited. Subsequent to that day, the deputy sheriff levied on the property as the property of C. L. The levy was good and held the property. Why the sheriff permitted the property to remain ten months without removing or selling does not appear from the testimony; but there is no proof that this delay

was in consequence of the plaintiff's directions. He did not therefore lose his lien upon the property. The question whether the execution had become dormant could not, however, properly arise before the justice. No one but another creditor or *bona fide* purchaser could raise that question; and the plaintiff in this case could not have been considered such purchaser, for on the day he made the purchase under suspicious circumstances, he admitted to the deputy sheriff that he knew of the execution, but denied his power to sell, on the ground of his removal from the county.

Whether the removal of the under sheriff from the county incapacitated him from selling, seems to me the important point in the case. The statute, 1 *R. L. of* 1813, *p.* 420, directs that each sheriff shall have an under sheriff, who shall be appointed by the sheriff by writing under seal, and removable at his pleasure; "and as often as any such under sheriff shall die or be removed from his office, or *move out of the county*, or become incapable of executing the office, another shall be appointed in his place." In this case Haddock, who had made the levy as under sheriff of Herkimer, had, intermediate the levy and sale, removed to Oneida county. This was a virtual resignation of his office; it was a voluntary withdrawal from the county, which by the statute vacated the office, and a successor was no doubt appointed. Under such circumstances, did he continue in office for any purpose? The principle is well established, that when a sheriff has begun to execute an execution, he has, after he goes out of office, a right to complete it; and in pursuance of that principle, it has been held that a deputy of a sheriff whose term of office has expired possesses a similar power. The authority of the deputy continues as long as the authority of the principal. But this supposes a continuance of authority derived from the principal, and not revoked by him. In such cases the principal must continue liable for the acts of the deputy. If a sheriff for any cause think proper to remove a deputy, does not the power of that deputy cease *in toto?* and are the sureties of the deputy any longer liable for his acts? If a deputy dies, there is surely an end of his acts; if he resign, is that resignation partial only, reserving a right to complete his un-

finished business, or does he not return to the sheriff, or hand over to some other deputy his unfinished business ? The case is not entirely analogous to that of a sheriff going out of office. It is not necessary that the deputy who begins to execute an execution should finish it, as it is with a sheriff. Every deputy acts in the name and on behalf of the sheriff, and the sheriff is responsible for the acts of all his deputies, but he is not responsible for the acts of a man from whom he has withdrawn all authority, or of one who has resigned his authority, or incapacitated himself by removing from the county. Had Haddock, instead of removing a few miles into a neighboring county, gone to another state, or to Canada or Europe, could it be contended that he must execute the process ? I am aware that the same remarks apply in some measure to the removal of the sheriff himself. The trust reposed in a deputy is a personal confidence which may be withdrawn at pleasure, and the sheriff may require a surrender of all process in the hands of the deputy. The sheriff may execute them himself or depute another. There is no necessity for a continuance of the deputy's authority after removal or resignation ; nor is it consistent with good policy, or the discreet administration of justice. If it be not in the power of a sheriff to strip an unworthy deputy at once of all authority, such deputy may ruin his sureties, or the sheriff, or both, though they may all endeavor to prevent it. If a removal by the sheriff takes away all power, as I hold it does, then a resignation or removal from the county must have the same effect, unless the sheriff continue the authority for the purpose of completing the unfinished business. If I am correct on this point, then the sale was without authority and void ; it was not even under color of law, and the defendant was a trespasser.

The former suit was not for the same cause of action, and is therefore no bar. On the 19th of October, Haddock and the defendant below removed the cow and hogs, and did not intermeddle with the furniture. A suit was commenced for the cow and hogs on the 20th October. At that time no cause of action existed in relation to the other property against Ferguson ; at that time he had not asserted any right to con-

trol it since the levy in December, 1828 ; and at that time the plaintiff had no pretence of title to it. It was not till the 19th that the plaintiff claimed title, and no cause of action existed in his favor until the 21st October, one day after the former suit was brought. The plaintiff could not embrace the whole in one suit, without abandoning the suit already brought and paying the costs; which he was not bound to do.

I am therefore of opinion that the courts below have decided correctly, and that the judgment of the Herkimer common pleas must be affirmed, with single costs.