JUDSON, plaintiff in error, *agt.* HOUGHTON, defendant in error.

*Questions discussed.*

The *condition* of an *adjournment bond,* given in an action before a justice of the peace, was, " That, if no part of the property of the said defendant, liable to be taken on execution, shall be removed, secreted, assigned, or in any way disposed of, (except for the necessary support of himself and family,) until the said demand of the said plaintiff shall be satisfied, or until the expiration of ten days after the said plaintiff shall be entitled to have an execution issued on the judgment in the said cause, if he shall obtain such judgment." In an action for a breach of the condition of this bond, where the *surety* alone appeared, the following questions arose:—

1. Whether, on proof of sale by defendant in the original suit of a *load of hay,* it was competent evidence for the defendant in this action to show the purchase by the defendant in the original suit, of flour, fish, and tea, and the support of his family, *unless* he also showed that the *money received for the hay was used for that purpose,* and was *necessary?*

2. Whether it was absolutely necessary to give *direct proof* that the money received for the hay was required for the support of the defendant or his family, or that it was so expended? Whether it might not be *inferred?*

3. Whether, in order to justify the inference that the money was thus applied,

26

Judson *agt.* Houghton.

it was competent to show the number of persons who composed defendant's family, and their reasonable and necessary weekly expenses?

4. Whether it was a breach of the condition of the bond, by the defendant in the original suit, in having, some months previous to that suit, sold some personal property and took a *mortgage* back for security, which mortgage, *at the time received*, he by PAROL *agreed* to assign to a third person, in consideration that the latter would cancel a mortgage he held on the same property; but which *assignment was not in fact made until after this adjournment bond was given?*

5. Whether it was competent to receive evidence of the *parol agreement* to assign the mortgage?

This was an action of debt upon a justice's court *adjournment bond.* The cause was tried before a justice of the peace of Chenango county. Judson was the plaintiff, and Jehial Houghton and Harvey Houghton were the defendants in the justice's court. The summons was not served on Harvey Houghton, and he did not appear in the suit. The justice rendered a judgment upon the verdict of the jury against Judson for costs. Judson removed the cause into the Chenango common pleas by certiorari; *both* of the *Houghtons* were named as defendants in the writ of certiorari. The common pleas reversed the judgment of the justice, and gave judgment against Jehial Houghton *alone* for twenty dollars costs.

Jehial Houghton removed the cause into the supreme court by writ of error, and there assigned common errors, and *specially,* that if judgment ought to have been given by the court of common pleas against him, it should have been given against him and Harvey Houghton *jointly.* This *special assignment of errors is not traversed or answered by the joinder in error.*

The bond on which the suit was brought was given to procure an adjournment in an action of assumpsit, in which said Judson was the plaintiff, and said *Harvey Houghton* was the defendant, and bears date Feb. 23, 1843. An execution was issued on the judgment rendered in the suit mentioned in the adjournment bond on the 29th day of July, 1843, and was returned *nulla bona* on the 17th day of August, 1843.

Jehial Houghton pleaded in the justice's court as follows:—
First, The general issue. Second, Two special pleas that the said execution was returnable *ninety* days from its date, (which

Judson *agt.* Houghton.

was in fact returned in nineteen days,) and that Judson had not *exhausted* his remedy on the execution; and that after it was returned and within the life of it, Harvey Houghton had sufficient property in the county of Chenango to have satisfied it. Third, That Harvey Houghton had not removed, secreted, assigned, or in any way disposed of his property. Jehial Houghton gave notices under the plea of the general issue. On demurrers all of said pleas (except the general issue) were overruled by the justice.

On the trial of the said cause, *Uri Tracy,* a witness sworn on the part of the plaintiff, testified: That he was a justice of the peace of Chenango county in 1842, and says as follows: A suit was commenced before me by summons by Everitt Judson, against Harvey Houghton, and issue was joined on the 27th day of January, 1843. The suit was adjourned by agreement of parties until the 23d day of February, 1843, at which time the cause was again adjourned by Harvey Houghton until the 28th day of April, 1843, and Harvey Houghton gave an adjournment bond, signed by himself and Jehial Houghton, which is hereunto annexed, marked "1." And as appears by my docket, I rendered a judgment in favor of Everitt Judson against Harvey Houghton, on the 28th day of April, 1843, for $42.44, damages and costs: the damages were $40.54, and the costs $1.90. I issued an execution on the judgment on the 29th day of July, 1843, and it was returned on the 17th day of August, 1843, by Ira Willoughby, constable, and his return on it, no property found. The execution handed to the witness, he says: This is the execution which I issued on the judgment. The plaintiff offers the execution in evidence; the defendant, Jehial Houghton, objects on the ground that the execution purports to have been issued on a different judgment than the one entered by justice Tracy against Harvey Houghton. The judgment as entered by the justice is $42.44, damages and costs, and the execution recites a different judgment, being issued for and commanding the constable to collect the sum of $42.54. The court sustained the objection, to which decision the plaintiff excepted.

The docket of justice Tracy, given in evidence, and that part of it which recites the issuing and return of the execution, subject to defendant's exception. Docket states the issuing of the execution to be on the 29th day of July, 1843, and returned by Ira Willoughby, a constable, on the 17th day of August, 1843, no property found.

Witness, *cross-examined*, says : I have never issued but one execution on the judgment. The defendant's counsel here asked the witness if he had ever issued any other execution on the judgment except the one in court; plaintiff's counsel objects, and the court sustained the objection; defendant's counsel excepts.

*Thomas Holmes*, a witness sworn on the part of the plaintiff, says : I am acquainted with Harvey Houghton; I was acquainted with him in 1843. Plaintiff offers to show by this witness that Harvey Houghton disposed of his personal property liable to execution previous to 29th July, 1843, and also previous to first of June, 1843, and after the bond was given, and before the time for issuing execution. Defendant's counsel objected, on the ground that the plaintiff must first show that a valid execution was issued on the judgment, and constable's return on it : court overruled, and the defendant excepted. Harvey Houghton sold one ton of hay to A. S. Perkins, the last of April, 1843, and he said he got $10 for it. He drew the hay from Mr. Justice Dickinson. Hay was selling at that time for $10 per ton. I do not know what he did with the money which he got for the hay.

Plaintiff rests for the present.

*Moses J. Ferry*, a witness on the part of the defendant, says : I was a partner of Harvey Houghton formerly; our partnership closed about the first of December, 1842. In the winter and spring of 1843, I lived within a mile and a half of Harvey Houghton; he had a wife and two children, which he supported at the time. I rode down to the village on a load of hay with Harvey Houghton, in the spring of 1843; he took the hay over the river. I do not know who bought the hay. I was in Mr. Tuttle's grocery that day, and Harvey Houghton bought some

flour, fish, and tea. I cannot tell the amount, nor how much he paid for it. Plaintiff objects, unless the defendant can show that the articles were purchased with the money which he got for the hay. Court overruled, and the plaintiff excepted. Witness says, Harvey Houghton kept house, and supported his family from 23d day of February, 1843, to 29th of July, 1843, and I should think it would be worth for necessaries to support his family, at that time, $1 each a week. The plaintiff objects to evidence of the expense of Harvey Houghton's family, and it is taken subject to said objection.

The witness, *cross-examined,* says: That I do n't know that Harvey Houghton had any personal property liable to execution from 23d February, 1843, to 29th July, 1843. I should think Harvey Houghton got about $2 worth of flour at Mr. Tuttle's grocery; at the time he got the codfish and tea, he got two or three codfish and less than one pound of tea. Harvey Houghton was not in business from 23d Feb. to 29th July, 1843; he collected some money belonging to him and myself.

The defendants rest.

The plaintiff offers in evidence a personal mortgage executed by Samuel Stiles to Harvey Houghton, a copy of which is hereunto annexed, marked " F." The mortgage was received in evidence subject to the defendant's exceptions. Said mortgage was given to secure the payment of seven hundred dollars, and dated 24th day of October, 1842, and assigned by Harvey Houghton to Jehial Houghton, on the 4th day of April, 1843; a copy of which assignment will be found endorsed on the copy of the said mortgage, marked " F." as aforementioned, and hereunto annexed. The defendant admits the assignment of the said mortgage by Harvey Houghton to Jehial Houghton. The mortgage is payable according to the condition of a certain bond, dated 24th October, 1842; a copy of which is hereunto annexed, marked " G." The bond given in evidence, the execution of it being admitted by the defendant's counsel, subject to defendant's exception.

*Samuel Stiles,* a witness sworn on the part of the plaintiff, says: The property which I mortgaged to Harvey Houghton

was worth $800. The first payment stated in the mortgage, the amount of which was $428, I was to pay Abel Smith on the 15th day of April, 1843. I did not pay Abel Smith at that time. I paid $50 in cloth at one time, and in August, 1843, I paid $50 cash.

Witness, *cross-examined*, says: The property which I mortgaged was in the factory, and it was there when I left, which was in September, 1843.

*Uriah Thompson*, a witness sworn on the part of the plaintiff, says: I purchased the real estate on which the factory stands, in August, 1843. The plaintiff offers to show by this witness that Jehial Houghton, one of the above defendants, sold the personal property mortgaged by Stiles to Harvey, and assigned by Harvey to him, after the 17th day of August, 1843: defendant objects. Court sustained the objection; plaintiff excepts.

Plaintiff rests.

The defendant offers in evidence a personal mortgage on the same property, specified in the mortgage executed by Samuel Stiles to Harvey Houghton, given by Harvey Houghton to Jehial Houghton, and dated on the 12th day of July, 1842, for $416.92, payable on the 12th day of July, 1843. The said mortgage is hereunto annexed, marked " H." The plaintiff admits the execution of the said mortgage, but objects to have it read in evidence. Mortgage read in evidence, subject to the plaintiff's exception.

*Samuel Stiles*, recalled by the defendant, Jehial Houghton, says: That on the 24th day of October, 1842, he purchased of Harvey Houghton the personal property, and gave him a personal mortgage to secure the payment of seven hundred dollars; that Jehial Houghton was present, and gave a writing giving up his claim on the property, by virtue of his personal mortgage, dated on the 12th day of July, 1842. The defendant offers to show by this witness, that on the 24th day of October, 1842, and at the time Jehial Houghton gave up his claim by virtue of his mortgage, that there was an agreement between him and Harvey Houghton, that he was to give up his mortgage on the

property, in order to enable Harvey Houghton to sell the property to Samuel Stiles; and that Harvey Houghton then agreed to assign to Jehial Houghton the personal mortgage which Samuel Stiles was about to give him to secure Jehial Houghton what he owed him. Plaintiff objects. Court overruled the objection. Plaintiff excepted. The witness says: When I bought the property of Harvey Houghton, Jehial Houghton had a personal mortgage on it, and I did not like to purchase it while his mortgage was on it; and Harvey Houghton wanted Jehial Houghton to give up his mortgage, so that he could sell the property to me, as I did not want to purchase it with that incumbrance on it; and Harvey told Jehial that if he would cancel his mortgage on the property, he would assign the mortgage which I was to give to him to Jehial, to secure him what he owed him; and it was talked over between them, that Harvey Houghton could assign to Jehial Houghton the mortgage which I was to give to Harvey Houghton. I do n't know that I can tell the exact words of the conversation. Harvey Houghton said if Jehial would give up his mortgage or claim on the property, he could arrange it so as to secure him.

Witness, *cross-examined,* says: Harvey Houghton said he and Jehial could arrange the security, and Jehial Houghton said, if he gave up his mortgage, Harvey could secure him by assigning to him my mortgage. I cannot tell why Harvey Houghton did not assign the mortgage to Jehial Houghton on that day; there was no time set when Harvey Houghton was to assign the mortgage to Jehial Houghton, as I recollect.

*Moses J. Ferry* recalled by the defendant, says: There has been no change of the property in the factory. On the 24th day of October, 1842, I was present when Samuel Stiles executed the mortgage to Harvey Houghton. There was something said about change of security between Harvey Houghton and Jehial Houghton. I cannot tell the conversation; there was something said about Harvey's assigning the Stiles mortgage to Jehial Houghton, but I cannot relate what was said.

This is all the testimony given on the trial.

The supreme court, at May term, 1846, on reversing the

Judson *agt.* Houghton.

judgment of the common pleas, delivered the following opinion :—

BEARDSLEY, J.    The special pleas were adjudged to be bad on demurrer, but as the defendant had a verdict and judgment in his favor on the general issue, which in terms denied "all the statements and allegations contained in the said plaintiff's declaration," it is unnecessary for any purpose to examine the special pleas and pass upon their sufficiency.    The issue tried was that formed by a general denial of the matters alleged in the declaration; and the whole case was thus brought out. The special pleas were not before the jury, and may be regarded as out of the case.

Two breaches of the condition of the bond were attempted to be established by the plaintiff; one by the sale by H. Houghton of a ton of hay about the close of April, 1843, and the other by the assignment of the mortgage to J. Houghton, on the 4th of that month.

The sale of the hay seems to have been conceded, but evidence was given to show that it had been disposed of for the necessary support of H. H. and his family.    This was fairly meeting that part of the case; and the evidence adduced for the purpose was competent and proper.    It was not absolutely necessary to give direct proof that the money received for the hay was required for the support of H. H., or his family, or that it was so expended.    These might be inferred; and in order to justify the inference it was competent to show the number of persons who composed the family of H. H., and their reasonable and necessary weekly expenses; that he was then in a great degree destitute of property and not engaged in business; and that on the day the hay was sold he made a purchase of flour, fish, and tea.

Nor do I see any thing illegal in that part of the trial which had especial reference to the assignment of the mortgage to J. Houghton.    It is competent to show that it was agreed on the 24th Oct. 1842, when Stiles gave his mortgage, that if J. H. would cancel the mortgage then held by him, H. H. would assign the mortgage about to be given by Stiles as security to

J. H., for the amount then due on the mortgage to be cancelled, and that upon this agreement the former mortgage was cancelled. If in truth such an agreement was made (and that was for the jury to determine) this mortgage given by Stiles to the extent of the indebtedness on the cancelled mortgage belonged as soon as executed in equity and conscience to J. H.; and although it was not in form assigned until the next April, the delay could not destroy the right of J. H., nor make the transfer in April a breach of the condition of this bond. It was only doing what H. H. was bound in law, equity, and honor to do, and should have been done before, and was not removing, secreting, assigning, or in any way disposing of the "property" of H. H. To the extent of the assignment, the mortgage was in equity the *property* of J. H. before the assignment was made; and the formal execution of that was in no respect illegal or improper.

The common pleas appear to have regarded the evidence of what passed between the two Houghtons on the 24th of October as evidence of an irrelevant conversation between them, and so not admissible as evidence against the plaintiff. But it was more than a mere conversation which was stated by the witnesses—was evidence to establish an agreement between them, made to be sure by words, (and in that sense it was a conversation,) but still no more open to objection on that ground, than evidence of any other verbal contract, which it becomes necessary to prove on a trial between third parties. The evidence for this purpose was admissible and it was correct to receive it.

On the part of the plaintiff, it was offered to prove that on the 17th of August, 1843, J. H. sold the property mortgaged to one Thompson, which offer was rejected by the justice. This was held to be erroneous by the common pleas. I confess that I do not see how this was a material fact. H. H. had previously assigned the mortgage to J. H., to secure the payment of $228, and whatever may have been done in virtue of this assignment, cannot be regarded as the act of the assignor, nor can it amount to a breach of the condition of this bond by

him, unless he is shown to have been a party to it in some other way than by the mere execution of the assignment.

The only grounds taken by the counsel for the defendant in error, were those stated in the record of the common pleas, and on which the judgment of the justice was reversed. I think neither of these can be sustained, and the judgment of the common pleas should be reversed.

Judgment reversed.

Judson, the plaintiff, brought a writ of error, and removed the judgment into this court.

*Roswell Judson, Attorney and*
*Rufus W. Peckham, Counsel,* for plaintiff in error.

*First.* Proof of the sale of the ton of hay, by H. Houghton, was sufficient to sustain plaintiff's action. To do away with this proof, it was not competent for the defendant, Jehial Houghton, to show the purchase of flour, fish, and tea, and the support of H. Houghton's family, unless he also showed the money got for the hay was used for that purpose, and was *necessary*. One claiming property to be exempt must show affirmatively and certainly that it is in *fact necessary*. (*Van Sickler* v. *Jacobs,* 14 *J. R.* 434; *Bowne* v. *Witt,* 19 *Wend.* 475.) The claimant holds the affirmative, and must bring himself clearly within the statute under which he claims, it being a personal privilege. It does not appear but that H. Houghton had any amount of money, other than the avails of the hay, for the support of himself and family. He had collected money due himself and Ferry—had been doing a good deal of factory business—held a bond and mortgage against Stiles, of a large amount, upon which he received in November, 1842, a $50 note, and in August, 1843, $50 in cash. (See *Error Book, p.* 30, *fol.* 102.) Though he may not have had any property liable to execution, other than the hay and his interest in the mortgaged property, it does not preclude the idea but that he was a wealthy man, his property consisting of bonds and mortgages, notes and accounts.

*Second.* On page 13, fol. 38, of Error Book, it appears the

plaintiff offered to prove " that Jehial Houghton sold the property mortgaged by Stiles to Harvey Houghton, and assigned by Harvey Houghton to him," &c., which proof was not admitted by the justice. Stiles swears the property was worth $800. Whether Jehial Houghton sold this property as assignee of Harvey Houghton, under the mortgage, or as agent of Harvey Houghton, (the assignment by Harvey Houghton to Jehial Houghton being a sham,) was a proper question to be left to the jury, and the proof offered was proper to raise that question.

Again, the proof offered was proper, to show that Harvey Houghton had *secreted* his property by a pretended transfer by said assignment. The Stiles mortgage was given as collateral security to a bond and mortgage, and conditioned to pay as in said bond specified. The Stiles mortgage was assigned to secure $228, to be paid out of the second payment of said mortgage, being the second payment of said bond. The first payment of said mortgage was about $428, on the 15th April, 1843. This payment was not made, and the mortgage became forfeit, and the title to the property became vested in Harvey Houghton, or his assignee. If the assignment was in good faith, and for a valuable consideration, (none was proven,) why did Harvey Houghton receive $50 on the bond, on the 8th Aug. 1843, being on the first payment in the Stiles mortgage? (See *Error Book, page* 30, *fol.* 102.) Was not the legal title, a leviable interest in that property, in Harvey Houghton? (*Ferguson* v. *Lee,* 9 *Wend.* 258.) And was not that leviable interest *secreted,* and the constable with the execution kept at bay by the sham assignment? And to save appearances, did not Jehial Houghton go on and sell the property? What did Jehial Houghton do with the avails? Certainly he did not pay this plaintiff's debt or execution against Harvey Houghton out of them.

Can it be, the legislature intended an adjournment bond should operate as a co-instrument to help out chattel mortgages more effectively with their great frauds upon creditors? or was it intended the bond should serve to keep the creditor in as favorable circumstances to collect his debt as when the bond

was given? Doubtless, the latter. But has it served that purpose in this case?

*Third.* But it is said by the defendant that there was an agreement made by and between himself and Harvey Houghton, on the 24th day of October, 1842, that Harvey Houghton should assign to the defendant, Jehial Houghton, the Stiles mortgage. In admitting proof of this the plaintiff says the justice erred.

1. No consideration for that agreement was proven. Jehial Houghton sought to claim under a personal mortgage, and was bound to show it was given for a good and valuable consideration and in good faith, which he did not do. *Prima facie,* his mortgage was a fraud as to the plaintiff, and ought not to have been read to the jury. (*Hanford* v. *Acker,* 4 *Hill,* 272, 295; *Smith & Hoe* v. *Acker,* 23 *Wend.* 653; 2 *R. S., p.* 70, 2 *ed.*)

2. It was a mere conversation between the defendant, Jehial Houghton, and a third person, and ought not to have been received in evidence against the plaintiff. No equity or good faith could arise in favor of defendant, Jehial Houghton; for, so far as it appeared, his mortgage was a *fraud in law,* (2 *R. S. p.* 70, § 5, 2 *ed.,*) and the exception to its being read in evidence was well taken. (3 *Hill,* 398.)

*Ransom Balcom, Attorney, and*
*N. Hill, jr., Counsel,* for defendant in error.

*First.* The common pleas erred in giving judgment for costs against Jehial Houghton *alone.* If a reversal of the justice's judgment was proper, (which is denied,) the judgment for costs should have been given *in form* against *both* Jehial Houghton and Harvey Houghton. (2 *R. S. 2d. ed. p.* 299, § 1; *Pardee et al.* v. *Haynes et al.,* 10 *Wendell,* 630.)

"This is not a mere formal defect which may be overlooked on a writ of error. It is matter of substance. It changes the form of the execution." (Per BRONSON, Justice, *Nelson* v. *Bostwick,* 5 *Hill,* 41.)

This error is specially assigned and not denied by the joinder in error.

*Second.* The ruling of the justice, excluding the execution

Judson *agt.* Houghton.

issued by justice Tracy, was correct, because it was issued upon a different judgment from the one entered in the docket of the justice, and for the further reason there was no evidence that the variance happened by *mistake.* But even admitting (for argument's sake) the exclusion of the execution to have been erroneous, the *error did not affect the merits*, and was cured by the introduction of justice Tracy's docket, which showed the issuing of an execution and its return *nulla bona.* The docket was *conclusive evidence.* (7 *Wendell*, 103; 13 *Johns. R.* 184; 2 *Cow. Tr. 2d ed.* 926, 1022 *and* 1023; 2 *R. S. 2d ed.* 195 *and* 196, §§ 243 *and* 245; 2 *R. S. 2d ed.* 185, § 181; 6 *Hill*, 42.)

This point was not made by Judson's counsel, either in the common pleas or in the supreme court. It should be deemed waived. (*Campbell* v. *Stokes*, 2 *Wendell*, 137.)

*Third.* The justice properly overruled the objections to the proof of the expense of supporting Harvey Houghton's family, and of his purchase of flour, fish, and tea, &c. Harvey Houghton had the right, according to the condition of the adjournment bond, to dispose of his property "for the necessary support of himself and family." He was not obliged to have a witness with him when he sold his hay, to see whether he received his pay in bills or specie, and keep such witness with him to see that he paid the identical bills or specie for the necessaries he purchased. And in case he sold no more property than enough "for the necessary support of himself and family," the presumption is that the proceeds of the sale or sales were properly applied for such support. (See 1 *Vol. Cowen and Hill's notes*, p. 304. See also the reasoning of justice BEARDSLEY in *Error Book, pp.* 37, 38.)

The other evidence showing the condition and number of Harvey Houghton's family was competent and proper to prove the necessity for his making what disposition he did of his property.

*Fourth.* The offer to prove by the witness Thompson, that Jehial Houghton sold the property mortgaged by Stiles to Harvey Houghton, and assigned by Harvey to Jehial, was properly overruled. For at the time it was alleged the sale was made, the execution had been issued more than *ten days,*

and had actually been *returned* to the justice who issued it. A sale after the 17th day of August, 1843, of the property of either Harvey or Jehial by either one or by both of them, was no violation of the condition of the adjournment bond. (See the reasoning of justice BEARDSLEY upon this point in *Error Book, p.* 39.)

*Fifth.* The objections to Jehial Houghton giving in evidence the personal mortgage executed to him by Harvey Houghton, dated July 12, 1842, and to the evidence of the agreement proved by the witness Stiles, were properly overruled by the justice. The mortgage and agreement proved by Stiles were good and legal evidence of a valuable consideration for the assignment of the Stiles mortgage by Harvey Houghton to Jehial Houghton.

It is also insisted with confidence that the testimony of Stiles established a valid assignment of the mortgage on the 24th day of October, 1842, which was before the adjournment bond was executed. "A chose in action may be assigned by parol without writing." (*Briggs* v. *Dorr*, 19 *Johns. R.* 95.)

As soon as the *consideration* for the assignment passed from Harvey Houghton to Jehial Houghton, the mortgage to the extent of the consideration or indebtedness was the *property* of Jehial Houghton, and the *date* of the assignment upon the mortgage is wholly immaterial, and the written assignment should be regarded as made when the consideration passed.

A court of equity would have compelled Harvey Houghton to execute the assignment of the mortgage to Jehial Houghton, if he had refused to do it, and his voluntarily doing it does not make the act unlawful, and furnishes no cause of action upon the bond. (See justice BEARDSLEY's reasoning upon the point, pp. 38, 39.)

*Sixth.* If it was admitted that the assignment of the Stiles mortgage by H. Houghton to J. Houghton was not effectual and valid until the *written* assignment was executed on the 4th day of April, 1843, such assignment was no breach of the condition of the adjournment bond for several reasons. First, because no payment was then *due* on the mortgage. Second,

because the mortgage was a chose in action and not "liable to be taken on execution." Thirdly, because the *first* payment mentioned in the mortgage *was not assigned*, and was to be made to *Abel Smith*. And Smith could have sustained an action in *his own name* for its recovery. (3 *Johns. Ch. R.* 254; 2 *Denio's R.* 45.)

Fourthly, because the payments *assigned* did not any of them become due until after the execution was *returned*. Fifthly, because the neglect to make the *first payment*, mentioned in the mortgage, when it became due did not render the mortgaged property liable to be taken on execution against the mortgagee: *all the payments* must be due before mortgaged property can be taken on execution against the mortgagee. Sixthly, because the presumption was, at the time the assignment was made, that Stiles would make the first payment to Abel Smith, when it became due; and it is very clear, if he had made that payment to Smith, when it became due, that such act would not have been a breach of the condition of the adjournment bond.

*Seventh.* The demurrers in the justice's court to the 2d, 3d, and 4th pleas of the defendant *admitted* the allegations and averments which they contain; and it is submitted that the facts set forth in said pleas are a *bar* to any recovery upon the adjournment bond. Judson should have *exhausted* his remedy upon his execution against Harvey Houghton before suing upon the bond. The execution was returnable *ninety* days from its date, and it was returned within *nineteen* days from its date. "Until the return day, however, it would be the duty of the sheriff to seize and sell any property of the defendant's which could be found in his bailiwick. The execution cannot therefore be considered legally returned unsatisfied, until *after the return day.*" (Per WALWORTH, chancellor, *Cassidy* v. *Meacham*, 3 *Paige's Reps.* 312.)

*Lastly.* Justice was done by the jury in the justice's court, and the judgment of the supreme court affirming the judgment of the justice is founded in law, equity, and good sense, and it is insisted that the same should be *affirmed.*

DECISION—judgment affirmed unanimously.

Judson *agt.* Houghton.

GRAY, Judge.—This action is prosecuting to recover damages for the breach of a bond executed by the defendant with one Harvey Houghton to the plaintiff, to procure the adjournment of a cause prosecuted by the plaintiff in a justice's court against said Harvey Houghton. The bond is the joint bond of the defendant and H. Houghton, and bears date the 23d Feb. 1843. The condition is, that until the payment by Harvey Houghton of any judgment which in the suit in the justice's court might be rendered in favor of the plaintiff, or until ten days after the day that the plaintiff should become entitled to execution on such judgment, the said Harvey Houghton would not remove, secrete, assign, or in anywise dispose of any of his property liable to execution, except such as might be necessary for the support of himself and family.

The case shows that a judgment was subsequently, in the month of April, 1843, rendered in said cause in favor of the plaintiff, and that an execution was duly issued thereon in July, and returned *nulla bona* in August, 1843, and that intermediate the date of the bond and the return of the execution unsatisfied, the said Harvey Houghton sold hay belonging to him, and made also an assignment of a chattel mortgage of $1,100 which he held against one Samuel Stiles. The chattel mortgage of $1,100 was assigned to the defendant, Jehial Houghton, on the 4th day of April, 1843.

The breaches assigned by the plaintiff were the sale of the hay and the assignment of said chattel mortgage by Harvey Houghton.

The evidence shows that Harvey Houghton had a family for whom he provided; and that on the same day that he sold the hay, which was one ton only, at $10, he purchased about $2 worth of flour, and also some codfish and tea, at a grocery where he sold the hay. The cause was tried by a jury, and to them was submitted the question whether the hay was necessary for the support of Harvey Houghton and his family, and whether the avails were so applied, and the jury found a verdict in favor of Houghton.

In relation to the assignment of the $1,100 mortgage, it was proved that the same was given to secure the purchase money

for the property covered by the mortgage, which was, on the date of the mortgage, sold by Harvey Houghton to said Stiles. This mortgage was given, and bears date the 27th Oct. 1842. On the 12th July, 1842, Harvey Houghton, to secure a debt owing from him to Jehial Houghton, had executed a chattel mortgage on this same property for about $417.

To enable Harvey Houghton to effect a sale of the property to Stiles, it was arranged, as was proved by Stiles, that the mortgage of Jehial Houghton for $417, of the date of July 12th, 1842, should be released, and was released to Harvey Houghton, and Harvey Houghton, to secure the debt owing by him to Jehial Houghton, agreed to assign to Jehial the mortgage which he was about to take, and which he did then take from Stiles.

This was the express agreement between the Houghtons, and the condition upon which Jehial relinquished his mortgage lien upon the goods to Harvey; and it was by virtue of this agreement, and in consummation of it, that Harvey Houghton, on the 4th day of April, 1843, assigned his mortgage against Stiles to Jehial Houghton. Now, although this assignment was in fact not made until the 4th of April, 1843, which was subsequent to the execution of this adjournment bond to the plaintiff, yet being in fulfilment of a previously existing binding contract, by relation, it took effect, and may be deemed to have been executed on the 24th day of Oct. 1842, the date of the agreement upon which it is founded.

The execution of this assignment was a discharge only of a prior binding obligation resting upon Harvey Houghton. But without this assignment the mortgage could not have been reached by the plaintiff's execution, and by it the plaintiff's right has not been interfered with, or in anywise affected.

Without an assignment Jehial Houghton had such an equitable claim and preference upon the mortgage as to have enabled him to enforce it in chancery, and to have defeated any right or interest which the plaintiff might have acquired by a levy on the execution, if the property of Harvey Houghton was, under any circumstances, liable to be taken on execution.

By the arrangement between the Houghtons, in October, 1842,

the equitable property of the Stiles mortgage, to the extent of the claim then relinquished by Jehial to Harvey Houghton, was in Jehial Houghton, and to that extent, irrespective of the assignment, Jehial Houghton had a preference, and could have enforced the assignment and payment of the mortgage to himself.

The assignment cannot, therefore, in this view be regarded as an infringement of the plaintiff's rights, and consequently not a violation of the bond given to him by the defendant.

But independently of this previously existing obligation to assign, suppose an assignment of this mortgage had been made by Harvey Houghton to Jehial, or to any other person, would such an assignment have operated as a breach of the bond, and enabled the plaintiff to take advantage of it by an action at law thereon? I apprehend not. The condition of the bond is, that Harvey Houghton should not assign, or dispose of, any property which is "*liable to be taken on execution.*"

It is settled that before forfeiture of the mortgage the interest of the mortgagee, in personal property mortgaged, is not the subject of levy and sale on execution. (9 *Wend.* 258, *Ferguson* v. *Lee.*) There was no forfeiture of the mortgage in this case. The mortgage was not wholly due until the 15th Oct. 1844.

From endorsements upon the mortgage it appears that the prior instalments were paid as provided for. At all events, there is no evidence that the mortgage had become forfeited. An assignment in this latter view, also, would not have amounted to a breach of the bond.

The judgment of the supreme court must be affirmed, with costs to the defendant.

NOTE.—In an action for a breach of the conditions of an *adjournment bond*, given on a trial before a justice of the peace.

*Held*, on proving that the principal had sold property liable to execution pending the adjournment, that the *surety* on the bond (the only defendant who appeared) might show, that the property had been disposed of for the *necessary support of the principal and his family.*

Also *held*, that it was not absolutely necessary to give *direct proof* that the money received for the property sold was required for the support of the principal or his family, or that it was so expended. These might be inferred; and in order to justify the inference, it was competent to show the number of persons

who composed the family of the principal, and their reasonable and necessary weekly expenses.

*Held*, also, on proving that the principal was the owner and holder of a mortgage of personal property, which he had assigned to the surety during the existence of the bond; that it was competent for the surety, the defendant in this suit, to show that the principal had made a *verbal contract*, for a valuable consideration, to assign the mortgage some months previous to executing the adjournment bond; that the mortgage thus assigned was, in equity, *the property* of the assignee before the assignment was made, and the formal execution of it was in no respect illegal or improper.

The execution of this assignment being a discharge only of a prior binding obligation, it took effect by relation from the time of the agreement to assign. But without the assignment the mortgagee had such an equitable claim and preference upon the mortgage as to have enabled him to enforce it in chancery, over any right or interest the plaintiff in the execution might have acquired by a levy.

Besides, it is settled that before forfeiture of a mortgage, the interest of the mortgagee in personal property mortgaged is not the subject of levy and sale on execution. There being no forfeiture of the mortgage in this case, there was no breach of the condition of the bond by the assignment.