## SUPERIOR COURT.

### SAUL agt. KRUGER.

The *interest* of a *bailee* or *pledgee* for security in goods in their possession may be taken and sold on execution against them. The purchaser obtains their right and interest in the goods pledged. Therefore, an action to *recover possession* of such property from the officer can not be maintained by an individual in possession, and having an interest therein as bailee or pledgee.

*General Term, June*, 1854.
Present—DUER, CAMPBELL and HOFFMAN, J. J.

P. T. WOODBURY, *for plaintiff*.
J. S. CARPENTIER, *for defendant*.

By the court—HOFFMAN, Justice. The action is to recover possession of certain personal property, consisting of twenty-four letter-clips, and a model of the steamship Sultana. The defendant is one of the constables of the city, authorized to serve process issuing out of a justice's court. On the 27th of October, 1852, an execution issued against the goods and chattels of John Doe and Richard Roe, comprising the firm of P. W. Byrne & Co., directed to levy the sum of $35, recovered in a justice's court, and also the sum of $3.87 for costs and charges. The defendant avers that on the said 27th of October, 1852, he levied upon the goods in question, then being the goods and property of P. W. Byrne & Co.

Upon the trial the jury found a verdict for the defendant, assessing his damages at $42.89, and finding the value of the property at the sum of $112. The property had been replevied at the commencement of the suit, and delivered to the plaintiff under the 211th section of the Code. It is proven by the plaintiff's admission that the model of the steamship belonged to one Captain Hall, and was left in Saul's possession. At the office at which it was kept, the signs of Edward Saul and of P. W. Byrne & Co. were conspicuous. A lease had been made out in the name of P. W. Byrne & Co., by Edward Saul, as their agent; the whole office was rented to P. W. Byrne &

Co. Saul had a sign up as commission merchant. This lease was destroyed on the failure of that firm. When that took place does not appear.

Again, the testimony of Lilly is decisive to ·show that the model belonged to Captain Hall, and that P. W. Byrne & Co. were the parties·entitled to a lien upon it for the amount of an advance of $25. He adds that Saul was sometimes doing business as the agent of P. W. Byrne & Co., and sometimes as a partner.

The libel in admiralty, which has been produced, was considered by the judge at the trial as conclusive in establishing that Saul was a member of the firm.

From the view we have taken of the case, it is not necessary to decide the exception taken on this ground, nor the exception for excluding the evidence as to who composed the firm of P. W. Byrne & Co. two years before the trial.

Two important questions have been made on the part of the defendant.

*First.* That the right as pledgees was undoubtedly in P. W. Byrne & Co. The possession was given originally to them. The presumption is that it remained in them. If Saul was a member of that firm, his manual possesion was that of the firm. If he was not a member, his possession was as the agent of the firm; but in either case, both the lien as pledgees and the possession was legally in them. And they could not maintain replevin, being defendants in the judgment. (Clark agt. Skinner, 20 *John. Rep.* 467 ; Gardner agt. Campbell, 15 *John. Rep.* 401.)

If the interest of a pledgee to the extent of that interest can not be taken on execution, then he·may·replevy. But then the firm should have brought the action. The plaintiff is proven not to have had any interest in the· property unless as a partner. If he was a partner then, he, in the name of the firm, should have brought the action.

*Second.* As some doubt, however, is entertained.by one of the court, whether Saul could not still support the action upon the basis of his possession, provided the property was not liable

to an execution, we have considered the other ground, viz., whether the interest of a bailee for security in goods in his possession may be taken on execution against him. This question is stated by Justice STORY to be unsettled. (*On Bailment.*)

It is true that the rule in the case of mortgages of real estate is, that an execution may not be levied upon the interest of a mortgagee upon a judgment against him. But this is only the rule before entry or foreclosure. And it was once held in Connecticut that such interest might be taken even before foreclosure. (Row agt. Couch, 1 *Root's Rep.* 452; see Huntington agt. Smith, 6 *Conn. Rep.* 235; Blanchard agt. Colbourne, 16 *Mass. Rep.* 345; Jackson agt. Willard, 4 *John. Rep.* 41; Jackson agt. Dubois, *id.* 216; Collins agt. Terrey, 7 *John.* 278.) When there is a forfeiture and possession, it is presumed the execution may be levied.

But it is decided that personal property in the hands of a mortgagee may be taken upon an execution against the mortgagee after forfeiture. (Ferguson agt. Lee, 9 *Wendell*, 258.)

The chief distinction between a pledge and a mortgage of chattels is, that delivery of possession is essential to the former, and that no forfeiture is worked by failure to perform the condition; but the pledge must be sold by process of law, or upon reasonable notice. (Cortelyou agt. Lansing, 2 *Caine's Cases*, 200; Hart agt. Ten Eyck, 2 *John. C. R.* 62; Ward agt. Sumner, 5 *Pickering*, 59.) We see nothing in these distinctions to exempt property pledged from the same liability as property mortgaged.

Upon this subject we refer also to the rule stated by Chief Justice SAVAGE in Otis agt. Wood, (3 *Wendell*, 500,) that where a person is in possession of a chattel, having a right to such possession for a specific time, he has an interest in it, which may be sold. When that interest expires, the owner is entitled to his goods.

The right of an execution creditor against a mortgagor to levy upon the mortgaged property received consideration in this court in the case of Carnley agt. Hill, (11 *Legal Observer*, 334,) and was determined in Mattison agt. Baucus, (1 *Comstock*,

Saul agt. Kruger.

295.) Where the mortgagee has the immediate right of possession, so that there is nothing but a right of redemption in the mortgagor, the property cannot be levied upon under an execution against him. But if he has the right of possession for a definite period, it appears that it may be.

The principle of such cases seems to be, that possession, coupled with an interest, renders the property liable.

Again, with respect to the rights of a pledgee, it has been decided that the owner of a saw-mill, who had sawed logs, retained a lien upon them, although removed, by agreement, from the premises, so that he could sustain replevin against the sheriff for taking them upon an execution against the owner. (Wheeler agt. McFarland, 10 *Wend.* 318.)

So the pledgee may have an action of trover against any one who converts the goods by authority from the general owner. (Ingersoll agt. Van Bohelin, 7 *Cowen*, 670.) And in the well-considered case of Bradock agt. Murray, (3 *Vermont Rep.* 302,) it was held, that the bailee of a chattel, coupled with an interest, might sustain trespass against the bailor and general owner.

These authorities show that a pledgee of goods, with an interest in them as security for a debt or demand, is armed with the whole power and remedies of the law to protect his possession, and support his claim. It would be anomalous if a right and interest so guarded should not be amenable to a judgment in favor of his creditor.

It was a rule of the common law that goods pawned or pledged could not be taken in execution against the pawnor. (Cases cited by JEWETT, Ch. J., in Stief agt. Hart, 1 *Comstock*, 28.) This was redressed by the statute of 1830, 2 *R. S.* 366, § 20, by which the right and interest of the person making the pledge might be sold on execution against him, and the purchaser would acquire all his title and interest, and should *have possession on complying* with the terms and conditions of the pledge.

In Stief agt. Hart, (1 *Com.* 20,) the supreme court had determined that upon such an execution the sheriff might enter into possession of the property pledged, in order to sell it.

This was affirmed upon an equal division (four to four) of the judges in the court of appeals. But it was also allowed that when the sale was consummated the property was to be redelivered, and could be held until the purchaser redeemed it. If a statute was necessary to authorize a levy upon an execution against a pledgor, then either the goods might be taken as against the pledgee or the property was wholly beyond the reach of the common law process, a conclusion not readily to be admitted.

We do not see any such inconsistency or practical embarassment from the establishment of the rule now stated as counsel insist upon. The purchaser, under a judgment against the pledgee, obtains the possession, and the right and interest of the pledgee. The purchaser, under an execution against the pledgor, obtains his right to reclaim the property upon fulfilling the terms of the pledge. There is merely a substitution of persons representing and holding the same rights.

But the remarks of the court in Carnley agt. Hill, as to the duties of the sheriff, in selling only the actual interest affected by the execution; and to make inquiry what is such actual interest as claimed, are as applicable here as to the case in which they were made.

The judgment is affirmed with costs.