BLAIR v. COMPTON.

# James Blair and another v. Benjamin S. Compton.

*Practice: Divided court: Affirmance.* In this case, which is *certiorari* to review an order of the circuit judge setting aside upon motion an execution levy and sale, the supreme court being equally divided, the order is affirmed under the statute.

*Execution sales: Motion to set aside levy or sale: Showing by affidavit.* The circuit courts have authority, as between the parties to a cause pending therein, to set aside upon motion for any illegality appearing therein a levy or sale by virtue of an execution issued by such court; and in case of an excessive levy or of a sale for an inadequate price, they may upon motion set aside the levy or sale; and the facts, if not appearing on the face of the papers, may properly be shown by affidavit. Every court controls its own process, and will prevent an abuse of the same, if its attention is seasonably called thereto upon motion.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Motions: Hearing before judge at chambers: Appearance: Waiver.* Where counsel have appeared and consented to the hearing of a motion before the circuit judge at chambers, and have there appeared and opposed the motion upon its merits, making no objection to the jurisdiction, they will not be permitted, after having been beaten on the merits, to make in the court of review a technical objection to the right of the judge to hear and determine the motion at chambers.—Per MARSTON, J., COOLEY., CH. J., concurring.

*Motion to set aside execution sale: Purchaser: Appearance: Waiver.* The purchaser at a judicial sale must be considered as having submitted himself thereby to the jurisdiction of the court as to all matters connected therewith; and when he has notice of a motion to set aside the sale, and in answer thereto appears and without objection goes to a hearing on the merits, he is not in a position to afterwards object to the power of the court to decide such motion.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Execution sales: Corporate shares: Statute must be complied with.* Corporate shares were not at common law subject to levy and sale under execution, and statutes authorizing it must be substantially complied with, or the sale will be unauthorized and void.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Executions: Levy: Return day: Officer: Service begun: Completion.* A levy made after the return day of the writ, or after the expiration of the official term of the officer, will render a sale thereunder void; but where the officer, before the return day and during his official term, has commenced the execution of the writ, he may, even without the aid of statutory provisions, complete it afterwards, though his term have in the meantime expired; the statutes in this regard are but declaratory of the common law.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Executions: Official duties: Presumptions.* The statutory requirements regulating proceedings upon execution are duties which the ministerial officer of the court executing its process is required to perform; and all reasonable presumptions are to be indulged in favor of the regularity of the acts of the officer.—Per MARSTON, J., COOLEY, CH. J., concurring.

BLAIR *v.* COMPTON.

*Executions: Corporate shares: Service: Statute construed.* Under the statute (*Comp. L.*, § *6113*) providing means for taking and selling on execution the shares or interests of a stockholder in a corporation, the right to serve the copy as therein provided upon "any officer or person who has at the time the custody of the books and papers of the corporation," is not to be confined alone to the case where there is no such officer of the company as "clerk, treasurer, or cashier;" but where the sheriff of the proper county where the office of the company within this state for the transaction of business is located, certifies that there is no clerk, treasurer or cashier within his bailiwick, he may then lawfully serve a copy upon any officer or person who has at the time the custody of the books and papers of the corporation.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Executions: Service: Return: Place: Presumptions.* A return of service of such copy upon "Wm. M. Smith, in charge of the office of the company," sufficiently indicates that such office was within the bailiwick of the officer certifying to such service, as it will not be presumed that the sheriff went outside his county to make service.—Per MARSTON, J., COOLEY, CH, J., concurring.

*Executions: Certificate of service: Information.* A certificate of service "upon the following persons, who I was informed had the custody of the books and papers of the said company, William H. Boyd, deputy secretary or clerk of said company, William M. Smith, in charge of the office of the company, and Benjamin S. Compton, president of the company," is held to be a sufficient return of service upon "the officer or person who had at the time the custody of the books and papers."—Per MARSTON, J., COOLEY, CH. J., concurring.

*Executions: Levy: Officer: Commencement of service: Attempt to levy.* However it may have been at common law, under our statutes the levy of an execution need not be complete or perfect on or before the return day, in order to entitle the officer to proceed afterwards, but where an officer has in good faith begun the service by an attempt to levy upon property, that is sufficient.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Corporate shares: Execution levy: Ascertaining from corporate officer the number of shares.* A compliance with the provisions of the statute (§ *6114*), as to ascertaining from the officer appointed by the corporation to keep the record thereof, the number of shares subjected to the levy by the service of the required notice, is not absolutely necessary to a valid execution sale, provided the sheriff ascertains from any source the actual number of shares owned by the judgment debtor, and puts them up and makes sale thereof.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Execution sales: Notice: Corporate shares: Sales in bulk: Indefinite amount.* An execution sale, under a notice describing the property as all the stock of a named corporation standing in the defendant's name on the books of the company or legally or equitably owned by him on specified days, the precise number of shares being unknown, but estimated to be 11,000 shares, where the amount at the sale was represented to be at least 4,162 shares, is sustained as against the objections of the judgment debtor, the purchaser making no complaint, as a valid sale to the extent of the 4,162 shares, but is held void as to the excess.—Per MARSTON, J., COOLEY, CH. J., concurring.

*Execution sales: Personal property: Corporate shares: Entire interest.* The rules applicable to the sales of personal property on execution do not apply to sales under the statute of shares in a corporation; and a sale in bulk of the defendant's entire interest is not void, though it might in a proper case on motion be set aside.—Per MARSTON, J., COOLEY, CH. J., concurring.

BLAIR *v.* COMPTON.

*Execution sales: Motion to set aside sale: Inadequacy of price: Strong show-*
*ing.* To authorize the setting aside of an execution sale of stocks on the
ground of inadequacy of price in consequence of the sale being in bulk
of the defendant's whole interest, a very clear case should be made out;
a creditor ought not to be delayed in the collection of his debt until the
property of his debtor will sell for the price his neighbors may fix upon
it, or until it can be sold for as much as might be obtained at private sale
under favorable circumstances.—Per MARSTON, J., COOLEY, CH. J., con-
curring.

*Motions to set aside execution sales: Review: Certiorari: Discretion.* Motions
to set aside execution sales are admissible; and the order of the circuit
court upon such a motion ought not to be reviewed on *certiorari* upon
questions going only to the propriety of the order and where the author-
ity to hear and determine the matter upon the papers submitted is undis-
puted.—Per CAMPBELL, J.
*Sheriff's return may be disputed.* A sheriff's return may be disputed by the
parties over whose interests he has attempted to declare evidence of
jurisdiction.—Per CAMPBELL, J.
*Motions to set aside execution sales: Review: Ground of decision: Record.*
Where a motion to set aside an execution sale has been heard and granted
upon a showing disputing the essential facts of service alleged in the
sheriff's return, this action cannot be reviewed on such return alone
considered as true, where the record fails to show that the ground of
decision may not have been these very disputed questions of fact as to
the service.—Per CAMPBELL, J.
*Execution sales: Personal property: Production of the property: Identifica-*
*tion.* A sale of personal property upon execution is not valid, either at
common law or under our practice, unless the property is produced at
the place of sale and within the view of the bidders, in the actual con-
trol of the officer, and present for identification and delivery.—Per CAMP-
BELL, J.
*Corporate shares: Execution levy and sale: Construction of statute.* The stat-
utory regulations as to levying upon and selling stock under executions
must be read and applied in the light of the rules of corporate law.—Per
CAMPBELL, J.
*Execution sales: Corporate interests: Legal title: Equitable interests.* The
corporate interests which under the statute can be levied on and sold
under execution are only such legal interests as appear on the corpora-
tion records as shares belonging to the judgment debtor; and no levy
can cover either interests subsequently acquired or mere equitable inter-
ests.—Per CAMPBELL, J.
*Executions: Levy: Stock: Sales: Identification of shares.* While a levy
served according to the statute may bind the property, yet before a law-
ful sale can be made the stock must be in some way obtained and iden-
tified and in shape for delivery; the difficulty of finding property will
not justify a sale of it at random and out of sight.—Per CAMPBELL, J.
*Stock: Execution sales: Amounts: Notice.* Execution sales of stock should
be in amounts within the reach of ordinary purchasers; and a sale under
a notice advertising all stock standing in the debtor's name "or legally
or equitably owned by him" on two specified dates, the precise amount
being unknown but estimated at 11,000 shares of the nominal value of fifty
dollars a share, cannot be sustained.—Per CAMPBELL, J.
*Execution sales: Amounts: Notice: Representations at sale.* The fact that
at the sale under such a notice it was represented that the amount was
at least 4,162 shares, without identifying them or stating the title to be a

BLAIR v. COMPTON.

legal title,—the notice not so averring it,—does not cure the defects.—
Per CAMPBELL, J.

*Execution sales: Purchaser: Rights of debtor: Competition: Bidders.* Nor
is it enough that the actual purchaser is satisfied; the debtor has a right
to have a chance for fair competition, and bidders have a right to expect
the sheriff to be furnished with some evidence which binds the company
by a statement of the amount of stock and ensures them the enjoyment
of what they bid upon.—Per CAMPBELL, J.

*Executions: Bail in error: Stay: Completed levy: Sales.* Under our stat-
utory regulations governing stay of execution by bail in error, the stay
does not dissolve or vitiate a completed levy on personalty under an out-
standing execution, and it is lawful for the sheriff, unless otherwise di-
rected by the court, to proceed and sell property which had previously
been completely subjected to levy, and return the proceeds into court.—
Per GRAVES, J.

*Executions: Stay: Bail in error: Attempt to levy: Beginning of execution.*
But where the stay became operative before levy on any thing was con-
summated, or any thing done beyond a mere movement towards a levy,
or an ineffectual attempt to levy, these preliminary steps do not consti-
tute a proceeding capable of independent existence as a legal fact as a
beginning of execution, such as to survive the stay, and after its cessa-
tion to be pieced out by further proceedings to a valid levy relating back
to the original action.—Per GRAVES, J.

*Executions: Beginning of service: Corporate shares: Bail in error: Stay:
Subsequent proceedings.* The mere preliminary service, in accordance
with the statute (*Comp. L. 1871,* §§ *6112-3*) governing levies upon shares
of stock, of a copy of the execution upon persons in charge of the com-
pany books and papers, is not sufficient to make out either a consum-
mated levy or the beginning of execution of the process, such as would
survive the stay of bail in error or contribute any force to further pro-
ceedings taken after the stay had ceased.—Per GRAVES, J.

*Heard November 3.    Decided April 11.*

*Certiorari* to Circuit Judge of Monroe Circuit.

*Norris, Blair & Stone,* for plaintiffs in *certiorari,* to the
question of jurisdiction, cited: *McLean County Bank v.
Flagg, 31 Ill., 290; Eckstein v. Calderwood, 34 Cal.,
660; Day v. Graham, 6 Ill., 435, 453; 9 Ill., 389;
Osborn v. Claud, 21 Iowa, 238; Nelson v. Brown, 23
Mo., 19; Reed v. Diven, 7 Ind., 189; Davis v. Camp-
bell, 12 Ind., 192; Draine v. Smelser, 15 Ala., 423;
James v. P. & C. R. R. Co., 23 N. H., 544; Shafer
v. Bolander, 4 Greene, 201; Woodcock v. Bennett, 1
Cow., 711; McElwee v. Sutton, 2 Bailey (S. C.), 361;
Hamilton v. Shrewsbury, 4 Rand. (Va.), 431; New-
ton's Heirs v. State Bank, 22 Ark., 21; May v. Thomas,*

*48 Me., 398; Stewart v. Severance, 43 Mo., 323; King v. Platt, 37 N. Y., 160; Swope v. Ardery, 5 Ind., 215; Wheatley v. Terry, 6 Kans., 427; C. L. § 4966; 21 Mich., 242.*

They also argued that the levy was regular, the officer having on November 29, 1872, before the stay of bail in error had become operative, done all in his power to make it so, and having substantially complied with the statute; and, moreover, that defendant Compton is estopped to deny the validity of the levy.

And the sale under the execution was regular, and if not, the defendant is estopped to question it as against the purchaser.

*S. T. Douglass,* for defendant in *certiorari,* insisted that both levy and sale were void, and that their invalidity appears on the face of the sheriff's return.

Corporate shares are not subject to levy and sale on execution at common law: *Rorer on Jud. Sales,* §§ *1002–3 ; Haggerty v. Wilber, 16 Johns., 287; Carey v. Bright, 58 Penn. St., 70.*

Our statute providing for the seizure and sale of such shares is designed to protect the corporation, and also to furnish to the debtor the same safeguard against oppression which the common law furnishes in case of other personal property, and its provisions must be substantially complied with or the proceedings will be void: *C. L.,* §§ *6113–16; Rorer,* §§ *1073–4, and note 2.*

The levy was void because (1) the return does not show service upon either the clerk, treasurer or cashier of the corporation, or that there was no such officer, in which event alone is substituted service on some other person admissible; (2) the return does not show service upon any other officer or person who "had at the time the custody of the books and papers of the corporation," but only that it was made on three persons named, who the sheriff "was informed" had such custody. The attempt

to remedy this defect by a new service several months after the return day of the execution is of no avail.

The sale was void because (1) the sheriff had not first ascertained, in the manner provided by the statute (*C. L.*, § *6114*), or in any other way, what particular shares or what number of shares had been levied upon, so that the public was not informed by the notice of sale what shares were to be sold, and bidders at the sale were not authentically informed and did not know what they were bidding upon; (2) the whole number of shares was offered and sold in bulk, and not in parcels.

On the question of jurisdiction he cited: *Rorer*, §§ *850, 862, 894; Cavenaugh v. Jackeway, Walk. Ch., 345; Coffey v. Coffey, 16 Ill.; San Francisco v. Pixley, 21 Cal., 60; Bearfield v. Stevens, Harp. (S. C.) Eq., 43; Hamilton v. Shrewsbury, 4 Rand. (Va.), 427.*

The circuit judge did not make the order setting aside the sale as matter of discretion, on the case made by the affidavits, to prevent oppression and hardship, etc., and if he had done so, his decision could not be reviewed on *certiorari*.


MARSTON, J:


In May, 1872, Blair recovered a judgment against Compton, in the circuit court for the county of Monroe, for upwards of ten thousand dollars. Execution was issued upon this judgment November 29th, 1872, and on the same day a levy by virtue thereof was made upon all the shares of stock in "The West Virginia Oil and Oil Land Company" standing in the name of said defendant. Other proceedings, hereinafter noticed, took place, and on the 7th day of April, 1875, a sale was made of such stock to William D. Thompson. On the 19th day of May notice of a motion was entered in said court and cause, that a motion would be made before said court on the 28th day of June to set aside said execution, and the sale made thereunder, for

BLAIR *v.* COMPTON.

irregularity, and, that such motion would be based upon the affidavits that day filed.    The notice of such motion served upon plaintiff's attorneys was, that such motion would be based upon the affidavits filed, copies of which were served, and also on the return of the late sheriff of Monroe county to such execution.

At an adjourned term of the circuit court of Monroe county, held on the 28th day of June, the motion came on to be heard, the attorneys of the respective parties in interest being present; owing, however, to the absence of one of defendant's counsel, application was made on the part of the defendant, to postpone the submission and hearing of the motion to some future day; whereupon it was agreed by all the respective counsel then present for the several parties, that the motion should be heard before Hon. Daniel L. Pratt, circuit judge of the first judicial circuit, in which are situate the counties of Monroe and Hillsdale, at chambers at the court house at Hillsdale, on the 12th day of July, at 2 P. M.

Upon the 9th day of July additional affidavits were filed, and copies served with a notice that they would be presented to the court on the part of the defendant on hearing of said motion at the time and place agreed upon.    Copies of all these affidavits and notices were served upon plaintiff's attorneys, and also upon Mr. Thompson, the purchaser of the stock on the execution sale.    On the 12th day of July, at the time and place agreed upon, counsel for the respective parties appeared, the counsel for plaintiff appearing also for Mr. Thompson.    Affidavits on the part of plaintiff and Thompson were presented, and the motion argued upon that and the next day.    On the 14th day of July an order was made and signed by said circuit judge at chambers, transmitted to the clerk of said court and filed on the same day, setting aside said execution sale as being null and void.

Upon the argument of the motion, counsel in support thereof, insisted among other things, that upon the face of the sheriff's return and certificate attached thereto, both the

levy and sale were void. Counsel opposing the motion replied thereto, but made no objection that any question as to the validity of such levy or sale, arising upon the face of the sheriff's return, independent of the affidavits, was beyond the scope of the motion.

Thompson and Blair afterwards join in a petition for a certiorari, claiming that the order setting aside said sale is void, as being beyond the jurisdiction of the judge who made it, for three reasons:

*First.* It was not within the legal power of a circuit judge to hear such matter and make such an order in any like case at chambers;

*Second.* It was not within the legal power of said judge at chambers, nor of the said circuit court in and for the county of Monroe, to make an order in effect taking from petitioner Thompson, in a summary proceeding, not according to the course of the common law, upon *ex parte* affidavits, substantial and valuable rights of property acquired at a public judicial sale without fraud or evil practice on the part of any one;

*Third.* There was no jurisdiction to declare and decide the execution sale to be "null and void" as matter of law, upon the papers and in the proceedings had therein.

While counsel for Blair and Thompson in this court, in his brief and upon argument, insisted, that Thompson being a purchaser in good faith and for a valuable consideration actually paid, and not being a party in the original cause, his rights could not be tried and determined upon *ex parte* affidavits, and that the order itself, being a chamber order made by the judge at chambers in the county of Hillsdale, was a nullity, and did not furnish a basis on which to enter an order in open court in the Monroe circuit, yet he conceded, both in his brief and upon the argument, that the circuit judge did not consider the affidavits read upon the hearing of said motion, but held the sale null and void from an inspection of the execution and return alone. He also, in his brief and upon argument, says this question of void

levy and sale is the real meritorious question in controversy; that all parties are willing and anxious to have it decided on this record, as the facts are all here as fully as a case in chancery could present them, and that a failure to decide the real question now would but cause a weary and expensive litigation of no benefit to either party.

Should we, however, pass unnoticed the preliminary questions raised, as counsel desires us, and confine our entire attention to the merits of the real question in controversy, our right so to do might hereafter be questioned, because if the circuit judge at chambers, as in this case, could not make such an order, then there is no reason or necessity for our proceeding any farther. We shall, however, under the circumstances, content ourselves with a brief statement of our conclusions upon these questions, without discussing them at length, as we otherwise might have done.

The circuit court for the county of Monroe, being the court from which the execution issued in this case, as between the parties thereto, had undoubtedly the power upon motion to set aside the levy or sale for any illegality appearing therein. The court could also, in case of an excessive levy, and in case where the property was sold at an inadequate price, set aside the levy and sale upon motion. In these last cases if the facts did not appear upon the face of the papers, as ordinarily they would not, they might be shown by affidavits, and the facts thus appearing, the court would grant relief. Every court controls its own process, and will prevent an abuse of the same, if its attention is seasonably called thereto upon motion.—*Cavenaugh v. Jakeway*, Walker's Ch., *344; Campau v. Godfrey, 18 Mich., 44.* In the case in *Walker's Ch.*, the court holds there must be fraud to give a court of chancery jurisdiction, that neither the fact that the sale was irregular, nor that Jakeway the purchaser was not a party to the suit, would give that court jurisdiction.

The circuit court, then, having jurisdiction to hear and determine the question upon motion, and the plaintiff hav-

ing by his counsel appeared and consented that the motion should be heard at chambers, and having there appeared and opposed the motion upon its merits, making no objection to the jurisdiction, he cannot now come in and make a technical objection to the right of the judge to hear the argument and make the order in this case.

In order to succeed under such circumstances it should clearly appear that consent. would not confer jurisdiction. And the same reasons apply to Thompson that do to the plaintiff.    Copies of the affidavits and notice of the motion were served upon Thompson.    He appeared by counsel; opposing affidavits in his behalf, his own amongst others, were filed and read; and no objection was made that he being a third party his rights could not thus be passed upon.    We think that any right to question in this proceeding the power of the circuit judge was waived.—See *Patterson v. McRea, 29 Mich., 258; Peck v. McAlpine, 3 Caines, 166 b.*

The purchaser at a judicial sale must be considered as having submitted himself thereby to the jurisdiction of the court as to all matters connected therewith, and when he has had notice and appears in answer thereto and makes no objection, but goes to a hearing on the merits, he is not in a position to afterwards object to the power of the court to decide such motion.

We will now proceed to ascertain whether there was a valid levy and sale of the property in question, and it might be well for us before examining what was in fact done by the officer, to first lay down the legal principles which must govern us in this case.

1.  At common law corporate shares were not subject to levy and sale upon execution.    This, however, has been changed by statute in many of the states, and where such a change has been made, the authorities all agree that if the statute authorizing such a levy and sale has not been substantially complied with, then the sale is unauthorized and void, and cannot, as in a case of a sale being voidable merely on ac-

count of some irregularity, be ratified.—*James v. Pontiac & Groveland P. R. Co., 8 Mich., 92; Howe v. Starkweather, 17 Mass., 240; Princeton Bank v. Crozer, 2 Zab., 383.*

2. A levy made after the return day of the execution, or after the official term of the officer has expired, and a sale made thereunder, is void, but where the officer has commenced the execution of the writ before the return day, he may complete it afterwards, and so where he has commenced its execution during his official term, he may complete it after his term of office has ceased.   Such was the rule at common law, and it has been recognized by statute in many of the states.   Our statutes in this respect are but declaratory of the common law, and will be noticed hereafter.— *Wheaton v. Sexton's Lessee, 4 Wheat., 504; Remington v. Linthicum, 14 Peters, 93; Phillips v. Dana, 3 Scam., 551; Wood v. Colvin, 5 Hill, 231; Childs v. McChesney, 20 Iowa, 438; Butterfield v. Walsh, 21 Iowa, 101; Stein v. Chambless, 18 Iowa, 476; Ferguson v. Lee, 9 Wend., 258, 260; Willoughby v. Dewey, 63 Ill., 248.*

3. The statutory requirements regulating proceedings upon execution are duties which the ministerial officer of the court executing its process is required to perform.   The general rule of law is, that there is no presumption that an officer has neglected his duties.   In other words, the presumptions are in favor of the regularity of the acts of the officer.—*Herman on Ex., § 345,* and the numerous cases there cited.   This rule has been recognized and acted upon in this state, under a variety of circumstances.—*Peck v. Cavell, 16 Mich., 11; Hall v. Kellogg, 16 Mich., 135; Allen v. Mills, 26 Mich., 126; Saunders v. Tioga Manf. Co., 27 Mich., 523; Morse v. Hewett, 28 Mich., 485.*

In the light of these rules we will examine the facts. That a judgment valid in every respect was recovered against Compton and an execution regularly issued November 29, 1872, and delivered to Phillip M. Nadeau, then sheriff of

Monroe county, is conceded. Nadeau, as sheriff, upon the same day made the following endorsement upon the execution:

"STATE OF MICHIGAN, COUNTY OF MONROE.—SS.

"By virtue of the within and attached execution, I have this day seized and levied upon all the ·shares of stock in 'The West Virginia Oil and Oil Land Company' standing in the name of the defendant in execution herein, Benjamin S. Compton; that 'there was no clerk, treasurer, or cashier of said company in my bailiwick, and that thereupon I served a true and certified copy of this execution upon the following persons, who, I was informed, had the custody of the books and papers of the said company: William H. Boyd, deputy secretary or clerk of said company; William M. Smith, in charge of the office of the company, and Benjamin S. Compton, president of said company; and at the same time demanded of them, and each of them, to give me a certificate of the number of shares or amount of interest held by said Compton in said company, which they declined to do." He further certifies that on the same day he levied upon certain real estate, and also gives a copy of the notice by him endorsed upon the copies of the execution which he delivered to the above parties.

The statute provides that the share or interest of a stockholder in a corporation may be taken in execution and sold in the following manner: "The officer shall leave a copy of the execution, certified by him, with the clerk, treasurer, or cashier of the company, if there be any such officer, and if not, then with any officer or person who has, at the time, the custody of the books and papers of the corporation; and the property shall be considered seized on execution when such copy is left."—§§ *6112, 6113, 2 C. L.*

The levy here made it is insisted was void, because *first,* the return does not show service of a copy of the execution upon either the clerk, treasurer or cashier of the corporation, or that there was no such officer, in which event alone service might be made upon some other person, and *second,*

33 MICH.—54.

the return does not show service upon any other officer or person who "had at the time the custody of the books and papers of the corporation," but only that it was made upon three persons named, who the sheriff was informed had such custody.

Was then the service in this case, looking at the return alone, in compliance with *section 6113* already quoted? That section must be construed in connection with the one preceding it, and also with the general statute authorizing the organization of corporations. *Section 6112* is general and authorizes the sale of a stockholder's interest in a "bank, insurance company or any other joint stock company," and when in *section 6113* the sheriff is required to leave a copy of the execution with the "clerk, treasurer, or cashier," it was not thereby conclusively assumed that such officers, or indeed any of them, would be found in every corporation and joint stock company intended to be embraced in *section 6112,* or that even if every corporation embraced therein did have a clerk, treasurer, or cashier, the copy must be delivered to one of them, and that in the event only of there being no such officers could the service be made upon some other officer or person having the custody of the books and papers.

The construction contended for would defeat the evident intent of the legislature, which was to authorize the levy and sale of a stockholder's interest in any corporation or joint stock company. This is apparent when we examine the statute under which many of our corporations, including the one in question, was organized.

*Chap. 95 of the Comp. Laws,* relating to mining and manufacturing companies, authorizes the company to elect "all necesssry officers."—§ *1.* Before the corporation shall commence business the "president and directors shall cause their articles of association to be filed with the secretary of state."—*Sec. 3.* "The directors shall choose one of their number president, and such other officers as their articles of association and by-laws may require."—*Sec. 10. Sec.*

*18* requires an annual report to be made, "signed by the president and a majority of the directors, and shall be verified by the oath of the secretary, or other officer making the same." Without reciting further, an examination will show that the only officers which the statute actually requires as essential to manage and carry on the business of the corporation is a president and directors. A "clerk, treasurer, or cashier" is nowhere required, nor is a secretary, conceding the words clerk and secretary to be synonymous. The corporation may provide for and elect or appoint such officers, but it is not bound to. Whenever the statute speaks of a duty to be performed by a secretary, it in the same connection recognizes the fact that there may be no such officer, and that such duty may be performed by some other officer. Nor would the fact that a report required by statute was verified by the president or a director as the "officer making the same," make such officer either a secretary or clerk within the meaning of *Sec. 6113.* Neither do I think the fact, that one of the directors was in the habit of keeping and recording the minutes of the corporation, drafting reports, etc., would make him a clerk, within the meaning of the section last referred to. Under such circumstances he would undoubtedly come within the second clause of that section as an officer or person having the custody of the books and papers of the corporation. It is therefore quite possible for a corporation to be formed in this state, issue shares of stock, and do business, and yet have neither a secretary, clerk, treasurer or cashier.

If, however, a corporation formed under this chapter should, in its articles of association or by-laws, provide for the election of either a clerk, treasurer or cashier, or all three, and in fact elect them, there is no provision requiring either or any of such officers to reside in this state. On the contrary, the statute recognizes the fact that they need not. The company may provide in its articles of association "for having the business office of such company out of this state, at any place within the United States, and.

to hold any meeting of the stockholders or directors of such company, at such office so provided for; but any such company, having its business office out of this state, shall have an office for the transaction of business within this state, to be also designated in such articles."—*Sec. 2685.*

If, therefore, the clerk, treasurer and cashier should reside out of this state, and there should be a deputy secretary or clerk of said company "in charge of the books and papers" at the office of the company in this state, nevertheless there could be no levy and sale under an execution of a stockholder's interest in such corporation, under the view of counsel, because there being in fact a clerk, treasurer and cashier of such corporation, the sheriff could not certify "that there was no such officer, in which event alone, the statute authorizes a substituted service upon some other person." And it is not claimed or pretended that the sheriff would have any authority to serve copies upon such officers outside this state. He could not serve a copy of the execution upon such officers, because they are out of the state, and therefore beyond his jurisdiction. He could not certify that there were no such officers, therefore the judgment creditor is without remedy. Such a construction would enable corporations in very many instances to protect the shares of their stockholders from levy and sale upon execution, thus defeating the evident intent of the legislature.

I cannot consent to any such construction, or content myself by saying that the legislature did not contemplate such a condition of things, did not provide therefor, and that additional legislation is necessary. The intention, as already said, is clear, and expressly gives the judgment creditor the right to levy upon and sell the interest of his debtor in any corporation formed under any law of this state. We are not at liberty, therefore, to defeat this intention, if the other provisions, pointing out the method of levying and selling, will, by any reasonable construction, meet the case.

BLAIR *v.* COMPTON.

The statute requires that in every case there shall be an office within this state for the transaction of business. The presumption must be that the officers of the corporation, if within the state, will be found at the office which the company by its articles of association designates as the place for the transaction of its business. If the sheriff of the proper county where such office is located certifies that there is no clerk, treasurer or cashier within his bailiwick, I am of opinion that this is sufficient; that he may then serve a copy upon any officer or person who has at the time the custody of the books and papers of the corporation.

Does it then sufficiently appear that the office of the company in this state was in Monroe county? I think it does. Such is the fair legal construction of the officer's certificate. Although he does not certify that the office of the company was in Monroe county, yet he does certify that he served a copy of the execution upon "Wm. M. Smith, in charge of the office of the company," and we cannot presume that the sheriff went outside his county to do this.

We now come to notice the second objection to the levy, viz: that the return does not show a service upon the officer or person who had at the time the custody of the books and papers, but only that the officer was informed they had such custody.

That portion of the return upon which this objection is based is as follows: "I served a true and certified copy of this execution upon the following persons, who, I was informed, had the custody of the books and papers of the said company, William H. Boyd, deputy secretary or clerk of said company, Wm. M. Smith, in charge of the office of the company, and Benjamin S. Compton, president of the company." The officer's certificate is clear and explicit, that he served the papers upon the persons named, and that they held the positions in the company stated. The qualification as to what he was informed applies only to the fact of these persons having the custody of the books and papers. Could the sheriff act upon such information? We might

answer this by asking in what other way could the sheriff ascertain who had the custody of the books and papers? Suppose he went to the office of the company, found the books and papers there, and also found several persons in the office, all apparently having equal rights and privileges; how is he, in such a case, to ascertain who has the custody in fact of the books and papers; or in case he found several persons in the office, but did not see the books and papers, how is he to ascertain whether they are there or not, and if they are, who has the custody of them?

Now, in the case first supposed it is not at all probable that even an inspection of the books and papers, were he permitted to make such an inspection, would give him the requisite information, and in the second case, unless he was permitted to examine the office he could not determine whether the books and papers were there, and when he did ascertain that fact, the question as to who had the custody of them would still be open. He could ascertain those facts only from making inquiries of those present who were apparently the officers of the company, or the apparent custodians of the papers. Where a sheriff goes to the office of a corporation and makes inquiries concerning its business, from those he there finds assuming to act as its officers, the corporation and its stockholders must be considered as bound by the information given; and if he is there informed, or if the officers of the company in any place inform him, of the persons having custody of the books and papers of the corporation, he may act upon such information, and the corporation and its stockholders will be bound by the information given. The officers in fact, or those in charge of the office, assuming to, and who are permitted to act as its agents or officers, must be held as having authority to bind the corporation to this extent. Third parties have a right to act upon the apparent authority of those found in possession and control of the office of the corporation. An individual dealing with one assuming to act as the cashier of a bank does not act at peril of the person turning out

not to be the cashier, and the bank therefore not being bound by his acts. The fact that he is permitted to occupy that position, and assumes to so act in the office of the bank, is sufficient. Now, we all know and must recognize the fact that a sheriff in the performance of his official duties must frequently act upon information received from others. In the service of process he does not always of his own knowledge know the person upon whom service is to be made. This information he derives from others. How frequently does he levy upon and sell personal property where the only knowledge he has that it belongs to the execution debtor is what others have told him. Let us test this still further. A corporation whose principal and only office is in this state, elects or appoints a clerk, treasurer or cashier; must the sheriff examine the records kept of such election before he can serve papers upon them and certify to the fact? Must he in every instance ascertain from the records whether a person assuming to act as president of a corporation is so in fact, before he can serve a summons upon him as commencement of suit against the corporation? But suppose there was no record kept of such election or appointment, what is he to do then? Or if there is, and he ascertains that A B was elected, how is he to ascertain whether the person upon whom he serves the papers is the one elected? Evidently in all these cases by making inquiries and satisfying himself of the fact. Upon a trial in court it would not be necessary to produce record evidence of the election or appointment of an officer; parol evidence would be sufficient; and I know of no good reason why any stricter rule should be applied in this case. The presumption must be that the books and papers of a corporation are kept at its office, and that those in charge of the office are there with the permission and authority of the company, and have the custody of the books and papers. There is still another ground upon which this may be rested. If the officer received his information from the execution debtor, who, he certifies, was president of the corporation, then no

one will dispute the fact that the information would be sufficient and would estop the defendant from now showing the contrary. While it does not appear that he received his information either from the president or from any officer of the company, or any one assuming to act as an officer in charge of its office, yet, as already stated, all presumptions are in favor of the validity of the officer's acts. So that if information from a particular source was necessary to enable the sheriff to serve the papers upon the persons named, we must assume that he received his information from that source, else he would not have so served them. In other words, he having acted upon information, we must assume that he derived it from the proper source, and that it was sufficient.—See *Morse v. Hewett, 28 Mich., 485,* and cases there cited, as well as those previously cited upon this point. I am of opinion, therefore, that the return of the officer shows a valid levy made on the 29th day of November upon defendant's stock in the corporation. This being so, a sale could be afterwards made, even after the return day of the execution and after the term of the officer had expired.

But even if this levy was not complete, I am of opinion that what took place on the 22d of July following was sufficient, and that the levy previously commenced was thereby perfected.

The return shows that on the 13th of December the sheriff was officially notified that the defendant had caused a writ of error to be issued out of this court in said cause, and had filed the proper bond. This, under the statute, operated as a stay of all further proceedings upon the execution. The judgment having been affirmed, Nadeau, as appears from his return, as late sheriff of Monroe county, at the request of the plaintiff's attorneys, on the 22d day of July, delivered to Talcott E. Wing, the then treasurer of the West Virginia Oil and Oil Land Company, a certified copy of the execution, with a demand to deliver to him a certificate of the number of shares or amount of interest

held by said defendant in said company. I have already said that at common law when an officer commences the execution of a writ before the return day he may complete it after the return day, even though his official term may have ceased.

*Sec. 573, Comp. Laws,* provides that notwithstanding the election of a new seriff, the former sheriff shall return in his own name all writs, etc., "and shall proceed to complete the execution of all final process and attachments which he shall have begun to execute, by a collection of money thereon, or by a levy upon property in pursuance thereof." § *6111,* is as follows: "When an officer shall have begun to serve an execution issued out of any court of record, on or before the return day of such execution, he may complete the service and return thereof after such return day." While at common law, there might be some question as to how far an officer must have proceeded before the return day, some courts holding that the levy must have been complete, others that he had commenced to make his levy, I think this statute must be considered as settling the question, that the levy need not be complete and perfect on or before the return day in order for the officer to proceed afterwards. Now, without discussing the essentials necessary to constitute a valid levy, it must be conceded that time is required for that purpose. If the claim is a large one, and the property is scattered, considerable time may be required for the officer to actually seize and take possession of sufficient to satisfy his execution. How far then must he have proceeded with his levy in order to have the benefit of this statute? Must the levy be complete and perfect before the return day, and nothing remain to be done but advertise and sell? Or in case he has commenced to make a levy but has been unable to complete it, can he after the return day perfect the same? The statute reads, when he shall have begun to serve an execution on or before the return day, he may complete the service and return thereof after such day. If the legislature intended to give an officer authority to pro-

ceed in case the levy was completed on or before the return day, and not otherwise, I think different language would have been used; and if we once concede the right to do any act after the return day in order to perfect the levy previously commenced, it then becomes very difficult to draw any line and say just what may or may not be done after the return day. Delivery of an execution to an officer, without any act being done by him in the service thereof, would not be sufficient, but where an officer has in good faith begun the service of it, by an attempt to levy upon property, although that levy may not have been perfected, I think he may after the return day proceed to complete his levy and sell the property. It would be difficult if not impossible to lay down any general rule applicable to all cases; each must be determined upon its own peculiar circumstances.

In *Clark v. Pratt, 55 Me., 546*, it appeared that the plaintiff claimed title to the land in dispute under an execution sale; that the execution had been issued December 18, 1841. The levy was commenced January 3, 1842, by a seizure of the land, and suspended, as certified by the officer making the seizure, by reason of a subsisting prior attachment in favor of the People's Bank. It further appeared that on March 17, 1842, the appraisers were selected and sworn and the levy completed. The return of the officer, after stating that the prior attachment referred to in his certificate of January 3, 1842, had been disposed of by a levy upon a part of the property attached, proceeded as follows: "I, Winfield Carr, late sheriff of Penobscott, still holding this execution, the same having been placed in my hands for service while exercising the office of sheriff of said county, and having on the 16th day of March inst., taken the real estate described in the foregoing certificate of the appraisers, being a part of the same which was seized by me as aforesaid on the 3d day of January last," etc. It was insisted in this case, upon argument, that the return showed the officer "took" the land on March 16, when he was not an officer; that the taking and appraisal

must be had while the officer is in commission, and that such acts are conditions precedent to valid subsequent proceedings. *Appleton, Ch. J.,* in delivering the opinion of the court said: "It is in proof that on March 17, 1842, Thos. A. Hill levied on an undivided half of lot 13, by virtue of an execution. It is objected that this levy is void, because at the time of its completion the officer by whom the proceedings were commenced had ceased to be sheriff. The levy was made under *R. S. 1841, ch. 117, §§ 33–34.* But by *chap. 104, § 21,* all sheriffs and their deputies may execute all precepts in their hands at the time of their removal from office. The officer, therefore, having the execution and commencing its service before the termination of his office, might proceed afterwards to complete such service."

Now whether the sheriff could after the return day, and after his term of office had ceased, levy upon new and additional stock, we need not decide, as the affidavit of the defendant shows that at the time of the first levy there was standing in his name upon the books of said company, and he then owned, at least four thousand one hundred and sixty-two shares. To this extent, then, the officer could sell, and for reasons hereafter stated a sale of any interest beyond this cannot be sustained.

It is next insisted that the sale was void, *first,* because made by the sheriff without having first ascertained, in the manner provided by the statute, or in any other way, the number of shares that had been levied upon. The statute *(§ 6114)* makes it the duty of the officer who is appointed to keep a record or account of the shares or interest of the stockholders, upon the execution being exhibited to him, to give a certificate of the number of shares or amount of the interest held by the judgment debtor.

I am of opinion that a compliance with the provision of this section is not absolutely necessary to a valid sale. If the sheriff can, from any source, ascertain the number of shares held by the judgment debtor he may offer the same

for sale whether the books of the corporation show him as owning any stock or not.    In case of a transfer, even although the books of the company do not show the same, yet an execution creditor or purchaser at such a sale, having notice thereof, would get no better title than the debtor had.—*Newberry v. Detroit, etc., Iron Manufacturing Co., 17 Mich., 141.*   So if the debtor had purchased shares, although the same did not appear upon the books in his name, yet his interest therein might be sold.    In other words, the entries upon the books would not be conclusive as to the interest of the execution debtor.    Then again, if the officer required to keep such a record was not in this state, the sheriff could not exhibit to him the execution, and this would prevent any sale if a compliance with this provision should be held necessary.

The return shows that the sheriff advertised to sell all the stock of The West Virginia Oil and Oil Land Company standing in the name of said defendant on the books of the company, or legally or equitably owned by him on the 29th of November or the 22d of July, that he was unable to give the precise number of shares, but estimated the amount at 11,000 shares.    He further returns that he exposed the stock described in the notice of sale, be the same more or less, "but represented at the sale to be at least 4,162 shares."

The only uncertainty which existed as to the property sold, was as to the legal or equitable interest which the defendant had over and above 4,162 shares.    The property was advertised as estimated at 11,000 shares, and represented at the sale to be at least 4,162 shares.

The purchaser, therefore, was sure of obtaining title to at least 4,162 shares.    This was certain.    He might obtain more. As to this it was uncertain, but this uncertainty would not tend to prevent his bidding what he considered the full value of the 4,162 shares.    It would have an opposite tendency more likely.    This uncertainty would however prevent parties from bidding intelligently for the interest the execution

debtor may have had over and above the 4,162 shares. As to the excess therefore the sale would be void. Beyond this the debtor could not complain. If a larger sum was bid for the 4,162 shares because of the prospect which the purchaser ahd of obtaining other rights, the debtor could not complain that he was injured thereby, if the sale should be afterwards confirmed, only as to the number of shares definitely ascertained and sold. If either, under such circumstances, could complain it would be the purchaser. But in this case he has not thought proper so to do. He may insist upon the sale being declared valid, and pay the price which he bid, although he may not thereby acquire title to all the property he expected to at the time he made his bid. And if he is willing to accept of less, yet pay the price bid for the whole, I do not see as any other person has a right to complain on that account. The sale may be valid in part, and void in part; valid as to the number of shares definitely ascertained and sold, and void as to all beyond this.

It is in the second place claimed that such sale was void, because these shares were offered for sale and sold in bulk, without having been offered for sale in parcels, and in support of this view the statute is cited, which provides that, "no personal property shall be exposed for sale on execution unless the same be present, and within the view of those attending such sale; and it shall be offered for sale in such lots and parcels as shall be calculated to bring the highest price."—§ 6106. This statute cannot be applied to all sales of personal property. This court has repeatedly held that where the interest of a mortgagor is sold on execution, the property must be sold entire, and not in parcels. Nor can this statute be applied in cases of sales of stock in a corporation. Shares in a corporation, although for certain purposes treated and considered as personal property, yet cannot for all purposes. They cannot be seized and taken possession of; they cannot be present and within the view of those attending the sale. They are not capable of being treated in this way; they are but the

BLAIR *v.* COMPTON.

mere evidences of property; they entitle the holder to a
certain share in the property and franchises of the corpora-
tion, and the very fact that at common law they could not
be seized and sold upon execution, shows clearly that the
rules applicable to the levy and sale of personal property
cannot be applied to such shares.     It is the interest which
the judgment debtor has in the corporation, that is sold and
not the mere paper certificates which may or may not truly
represent that interest.     Whether each share is represented
by a separate certificate nowhere appears.     Whether such
was the fact or not, a sale in bulk would not be void.     It
might upon proper showing be set aside upon motion.     And
we are asked, in case we arrive at the conclusion that upon
the facts appearing in the sheriff's return the sale can be
upheld as valid, to look into the affidavits and see whether
on the whole the sale, though not a nullity, ought not in
justice to be set aside.     The only matter set up in the affi-
davits which I consider it necessary to notice is what relates
to the sale being made in bulk, and the inadequate price
the property brought on that account.     Upon these grounds
a very clear case should be made to warrant us in interfer-
ing.     It is a well known fact that property sold at a forced
sale very seldom brings what the owner considers, or what
may be in fact, its market value.     The supreme court of
Illinois upon a like question said:     "But it never has been
held that the creditor can be delayed in the collection of
his money until the property of his debtor will sell for the
price his neighbors may fix upon it, or until it can be sold
for as much as might be obtained for it at private sale
under favorable circumstances.     To hold such a doctrine
would well nigh suspend all collections of money under exe-
cution sales."—*Noyes v. True, 23 Ill., 504.*

Taking all the facts into consideration, I think the sale
upon this ground should not be set aside.

It clearly appears from the purchaser's own showing, that
he purchased such stock for defendant's benefit, and to pre-
vent it passing into the hands of strangers, and thus be

beyond Compton's power of redeeming, and that his inten-
tion was to re-assign to defendant upon certain conditions.
It would seem, therefore, as though defendant had a right
to redeem the 4,162 shares sold, but as the facts in relation
to this matter are not so fully before us, we give no opinion
thereon, but leave the parties to pursue this matter further
should they consider it proper.

I am of opinion, therefore, that the order of the court
setting aside the sale should be quashed and held for naught,
with costs to the plaintiff.

COOLEY, CH. J., concurred.

CAMPBELL, J :

The *certiorari* in this case is brought to review the order
of the circuit court for the county of Monroe setting aside
a sale of stock.

The grounds of objection set up in the affidavit are con-
fined to the jurisdiction of the circuit judge to hear the
motion or to make such an order; but as it seems to be
assumed the action is open here so far as this court can
review such proceedings, and as there can be no serious
doubt that such motions are admissible, I shall not dwell
upon the formal question.

I do not, however, see very well how we can examine
into the propriety of the order if it was, as is admitted,
within the authority to hear and determine on what was
before the judge.    He had before him the sheriff's return,
and a number of opposing affidavits.    Some of these related
to the equities of the sale.    Some went further and bore
upon its legality.    The affidavit for *certiorari* shows that
these papers were all used and discussed on the motion.

The order of the court is simply that the sale be set aside,
vacated and held for naught as null and void.    The judge's
return is express that the motion was heard and decided on
all the papers.    And it also shows that the argument upon

-the invalidity of the sale was not confined to the sheriff's return and certificate, but that this was urged "*among other things.*"

Apart from the other matters set out in the affidavits, there was a positive showing, not on information and belief, that the sheriff did not serve any notice or copy of the levy or execution upon the persons mentioned in his return as officers of the company, or upon any one in custody of the company's affairs. As there is now no question but that a sheriff's return can be disputed by the parties over whose interests he has attempted to declare evidence of jurisdiction, and as the record does not disclose that this may not at least have been a ground of decision, we cannot review a decision which, upon such facts, would necessarily follow if the judge believed them. And it seems to me clear that this should dispose of the case.

I think, however, that the sale is void on the return itself.

At common law, and under our practice, a sale of personal property cannot be made on execution unless the property is produced at the place of sale, and within view of the bidders. It must be in the actual control of the officer, and it must be present for identification and delivery. No officer can lawfully sell what he cannot turn over to the purchaser.

It is against the general policy of the law to sell on execution any interest which cannot be thus delivered or seen. Where interests are intangible and incorporeal they are usually reached in equity, where the transfer can be made effectual by coercion of the owner. And all innovations on this rule are statutory, and can only be carried out by close adherence to statutory forms.

The stock of mining companies is divided into shares, and the holders are entitled to certificates which will identify their shares. These certificates are made by statute transferable by endorsement, and the purchaser and endorsee has a right to be received and certified in turn as a stock-

holder. The amount subject to be assessed may not all be called in at once, or at all, and there may be stock fully paid or part paid, so that all stock is not alike in this respect. These being all statutory regulations as well as common-law incidents, the statute providing for the levy on stock and its sale upon execution must be read in the light of the rules of corporate law; and must be applied accordingly.

The statute allowing levies on stock owned by individual shareholders requires the following routine: The officer is to "leave a copy of the execution certified by him, with the clerk, treasurer, or cashier of the company, if there be any such officer, and if not, then with any officer or person who has, at the time, the custody of the books and papers of the corporation; and the property shall be considered seized on execution when such copy is left."

"The officer of the company who is appointed to keep a record or account of the shares or interest of the stockholders therein, shall, upon exhibiting to him the execution, be bound to give a certificate of the number of shares or amount of the interest held by such judgment debtor."

"A copy of the execution and the return thereon, certified by the officer executing the same, shall, within fourteen days after the sale, be left with the officer of the company whose duty it may be to keep a record of the transfer of shares; and the purchaser shall thereupon be entitled to a certificate or certificates of the shares bought by him, upon paying the fees therefor, and for recording the transfer."—*C. L.*, §§ *6112, 6113, 6114, 6115.*

This shows very clearly that the interests which can be levied on are such legal interests as appear on the corporation records as shares belonging to the judgment debtor, which can be thus identified as his legally, and not equitably, and which can be transferred on the books, as he himself might have transferred them, so as to make complete record title. It must be stock standing in his name. By taking the proper steps the company is notified of the levy, and

therefore against transferring what is levied upon.    But no levy can cover interests subsequently acquired, neither can it cover interests not legally vested by being credited to the judgment debtor as his property on the company books. Till that is done his interests are equitable merely, and not subject to levy.    The legal title to stock must always be of record.

While a levy may bind the property if served on any of the officers named, yet before the law officer can identify the stock it must be obtained from the company officer who keeps the stock account, and who may or may not be one of those named.   And unless the stock is identified in some way, no purchaser can put himself or be put in a position where the subject of transfer can be placed on record and a new certificate or certificates issued in lieu of those issued or credited to the debtor.    Unless. these rules are followed no purchaser can know what he is buying, and the officer cannot tell what he is selling; and the result will be, not only that property cannot be sold for its value, but title cannot be perfected.

If any one bound to furnish such information fails to give it, and so leaves the levy uncertain, there is the same remedy open as in other cases where difficulties exist.    A bill in equity will lie in aid of the execution.    Perhaps there may also be a more summary legal remedy by *mandamus* or otherwise.    But the difficulty of finding property will not justify a sale of it at random or out of sight, and the statute in prescribing accurate steps to be taken goes no further than is required in the sale of any personalty.

When a sale is made so that the purchaser knows, as he will thus know, the precise thing he is buying, and that the title is ascertained, as it always is legally on the corporate books, there can be no difficulty in getting bids from those who have any desire to purchase such property, unless sold in such amounts as to amount to a legal fraud, as it was here.    The law never contemplated sales in amounts beyond the reach of ordinary purchasers.    And it never

tolerates illusory sales where one purchaser cannot be put in as good a position as others to know what he is called to bid upon.

The notice of sale in this case was not even definite enough to indicate that Compton's record interest was to be sold, or its amount. It advertises all stock standing in his name "or legally or equitably owned by him on the 29th day of November, A. D. 1872, or on the 22d day of July, A. D. 1873." And it states that the precise amount is unknown, but is estimated at 11,000 shares of the nominal value of $50 a share.

This indicates not only that the purchaser must bid on an entire uncertainty, but also that he will have to bid on the whole interest undivided (because unknown), and that the property being nominally worth $55,000, no small bidders need appear. As the last date was beyond the life of the execution, as well as beyond his official term, there was the further uncertainty of what Compton owned in November, 1872.

Upon the return of sale it is stated the amount was represented as at least 4,162 shares. But this does not identify it. It does no good to bidders whom the notice had left in doubt. It does not show that any representation was made as to the title being a legal title,—the notice not so averring it. As a sale of any thing but a legal record title would be absolutely void, the sheriff by undertaking to make a sale in this way must necessarily prevent a fair sale, even allowing his right to sell at all without identifying the property in some more exact way as to amount and other incidents. The fact that the actual purchaser was satisfied is not enough. The debtor has a right to have a chance for fair competition, and bidders have a right to expect the sheriff to be furnished with some evidence which binds the company by a statement of the amount of stock, and ensures them the enjoyment of what they bid upon.

I think the return is fatally defective, and the proceedings are illegal in other particulars upon which I do not

deem it necessary to enlarge, but for the reasons given I think the order of the circuit judge should be affirmed.

GRAVES, J:

Blair recovered judgment in the court below and sued out execution, and the sheriff took certain steps towards levying on shares of Compton in the oil company, but was interrupted by writ of error sued out by Compton, and bail in error pursuant to the statute. The writ of error was served on the clerk, and the cause was brought here and heard, and we affirmed the judgment. The regularity of the practice in removing the cause, and in the steps to stop action below, has not been questioned. Assuming, as we must, that those proceedings were legal, what was their legitimate effect on the execution, and the doings of the sheriff under it?

Was the act of the sheriff, so far as it went, a legal fact not prejudiced or despoiled of efficacy by the intervention of the writ of error and bail, but left to await the addition, after affirmance, of other such facts as should be needful to constitute a valid completed levy; or, on the other hand, was it an imperfect proceeding which was rendered inconsequential by the operation of the writ of error and bail?

The former position must rest on the broad claim, that at whatever stage the sheriff is arrested after doing any act in part execution of the fact of levy on personalty, whatever may be the amount or whatever the character of the personalty, what is thus done, whether amounting or not amounting to a finished levy on one or more specific items of personalty, must retain its original force, and that every thing beyond what is thus then done and accomplished must be abstained from. There must be at the very time an absolute pause; nothing more, nothing less. The act in part execution of the fact of levy must stand, whilst the stay prevents any additional or further act. If the levy is complete on one thing or on an immense quantity, or even if a sale

is at hand or begun, whatever may be the nature of the personalty or the incidental or surrounding circumstances, what is done must stand, but all further action must be avoided in obedience to the stay. If we admit that an act towards a levy, but which in itself is not a levy, is of force in this way because it is a step taken under the execution, then, upon the same principle, any other steps, at whatever stage occurring, must be respected and preserved, whilst all further steps or action must be absolutely suspended. The same interpretation of the law which is necessary to support the first must lead to the last.

The operation of such a construction ought therefore to be examined in view of its consequences and results in case of a finished as well as an unfinished levy upon one or more items of personalty before the writ of error comes to apply as a stay.

If a perfect or imperfect levy on personalty is in any instance kept in suspense, the same effect must follow in all cases. Whether the execution has only a few days to run or many, whether it has been applied to one sort of personalty or another, whether the amount is great or small, or whether positive and complete suspension at and from the very time the proceeding in error attaches must cause little or great mischief or damage, can make no difference.

Now wherever the conditions in point of law will admit of it, it is the lawful province of the sheriff in case of levy to exclude the debtor's possession until sale, and in numerous cases his own protection requires the sheriff to do this. His responsibility is necessarily large. Whatever the law considers as susceptible of corporeal subjection under the writ, it supposes he takes in case of levy and keeps under his dominion until regularly disposed of, and no body is under legal obligation to relieve him from any of the direct or incidental burdens. He may it is true make the debtor or a third person if willing his bailiff or keeper, but this is matter of arrangement for his own convenience, and which may or may not be practicable, or if practicable may not

be prudent. Still his risk must remain. The law casts a
heavy responsibility upon him and empowers him to be his
own keeper, and he is under no legal obligation or duty to
allow removable personalty to be meddled with by the debtor
whilst the levy continues actually in force, and if he permits
the debtor or third persons to be keeper for him, the
sanctity of the levy must remain and the property must
continue tied up by it.

The merits of a given construction may be sometimes
tested by the supposition of practical cases, and a glance at
some among many instances will at once suggest very for-
midable objections against the idea that whatever step may
have been taken when the writ of error attaches, whether
the step be one which amounts or falls short of amounting
to a finished levy on some item of personalty, all proceed-
ings must at once stop, and the act, whether constituting a
levy or something less than a levy, must remain as so much
done and not necessary to be repeated. Now a sheriff may
have entered upon the making a levy without having gone
far enough to consummate it on any thing. Or he may have
made a finished levy on particular items and been stopped
when about to levy, or when intending to levy on others,
or before being interrupted he may have made a finished levy
on all the items intended to be levied on. Now suppose
the entire stock of one in extensive trade to be put under
levy, or the stock and machinery of a great lumbering, or
mining, or salt, or manufacturing concern, or the like, to
be so placed, must the property so seized continue tied up
for an uncertain time? Other cases may be mentioned.
Suppose a levy to have been made on a drove or train of
hogs, cattle, or other animals requiring great and unremit-
ting attention and labor in their care and custody, and large
daily expense for keeping; or suppose the levy to have been
made on a mass of perishable property, or on growing crops
ready to be harvested, or on property covered by chattel
mortgage about due. Instead of a finished levy in these
cases, suppose it to be a levy only in part made, so as not

to be finished in regard to any item. What is to be the consequence? What may the sheriff or others in interest do? If the act of levy is complete, must it stand and the sheriff continue responsible, and every thing remain in the exact situation of the moment in obedience to the supposed operation of the writ of error? If not finished in regard to any item, what then? What is the situation of the proceeding? What is the position of the officer and what is the condition of the property? What are the rights and duties of the sheriff and the parties? Where are the regulations to obviate the difficulties involved in the theory in question? The law is usually particular in taking security and raising guards against embarrassing incidents to be plainly foreseen as likely to ensue · from its own special provisions. The statute seems not to have contemplated need for regulations suited to any such emergencies, and can such omission be accounted for otherwise than by supposing no room was understood as left for the emergencies themselves? At common law no bail in error was required, and if no final process had gone, the writ of error so far paralyzed the power of the lower court as to preclude the issue of such process during the pendency of the writ; or if such process had already issued, to supersede it or cause it to be superseded. Still it was held that the execution of such process was an entirety and not severable, and hence if the process had gone out and its execution had actually begun, it should proceed by sale of what had been seized at the time of the intervention of the writ of error, and that the proceeds should be returned into court to abide the event of that writ. No further or additional levy could be made. Neither could an unfinished levy be completed. The execution of the process, so far as such execution had been commenced by full levy on any leviable item, might be completed by sale of such item and return of proceeds. To that property the process had perfectly attached, and as the completion of execution in regard to it required a sale and return of proceeds, those things were not precluded. There could be no sev

erance of execution.   As writs of error became common on
trifling grounds, and were often sued out simply for delay,
the vexation and hindrance caused by the restraining force
of the proceeding induced efforts to correct the practice,
and the judges of the king's bench took measures to stay
the issuing of the writ without a previous showing that sub-
stantial grounds existed; and at a later period the judges
of the common pleas resolved that supersedeas should not
be made until some manifest and pregnant error should be
notified.   Subsequently successive parliaments applied a re-
forming hand, and enacted in substance, that no execution
should be stayed or delayed upon or by a writ of error, or
supersedeas thereupon be sued, unless bail in error should
be given, and the acts prescribed the nature and form of
the security and generally the course in giving it.—2 *Tidd*,
*1202, et seq.; Merilon v. Stevens, Willes, 271; Mills v.
Conner, 1 Blackf., 5, note; Blanchard v. Myers, 9 J. R.,
66; Belshaw v. Marshall, 4 B. & Adol., 336; Slaughter
House Cases, 10 Wall., 273; 3 Bouvier's Inst., Nos. 3342,
3361, 3366.*

Under these provisions the rule was admitted and ob-
served, that if the sheriff had fully levied on any specific
goods, and so had commenced execution of the process, he
was to go on and sell what he had seized, notwithstanding
the writ of error and bail, and accordingly none of the dif-
ficulties before suggested as involved in an enforced suspen-
sion of all further action could arise.   The goods were not
required to be tied up subject to a variety of incidental
risks and mischiefs and where, too, in many cases there must
be repugnant or incongruous regulations.   The beginning
of execution of the process, which was said to be sufficient
to avoid the stay in so far as to allow completion of what
had been commenced, had no reference to a mere partial
act of levy.   The meaning is readily gathered from a view
of the facts and language taken together.   A distinction is
to be observed between the process itself, the finished act
which is denoted by the term *levy*, and the stuff or things

subject to the act. What was meant was an effectual service in respect to one or more specific items; a levy on such item or items, which, as to such property, would be the beginning of execution, and which might be completed or consummated by sale and return of proceeds. No other articles could be levied on, or an unfinished levy be completed, and the meaning of a beginning of execution was not that the process having been levied on one or more things it might be kept up and carried to other things. If nothing was fully levied on, execution of process had not begun at all, and as a consequence of the intervention of the stay, the proceedings remained barren. Nothing could be sold because nothing had been levied on, and the process, being one not partly executed, one not begun to be executed, was stayed or superseded. After the statutes referred to, no supersedeas was deemed necessary.—*Sampson v. Brown, 2 East, 439.* They were sufficient by themselves.— See authorities before cited; also *Lane v. Bacchus, 2 T. R., 44; Jaques v. Nixon, 1 T. R., 279; Braithwaite v. Brown, 1 Chitty R., 238;* —— *v. Butler, Ib., 241; Sampson v. Brown, supra; Smith v. Howard, 2 Dow. & Ry., 85; Attenbury v. Smith, Ib., note; Bailey v. Baxter, 1 Mass., 156; 1 Root's Summary, 563; Phelps v. Landon, 2 Day, 370; Arnold v. Fuller's Heirs, 1 Ohio (Ham.), 458; Boyle v. Zacharie, 6 Pet., 648; Dutton v. Tracy, 4 Conn., 365; United States v. Dashiel, 3 Wall., 688; Board of Commissioners v. Gorman, 19 Wall., 661.*

The revision of New York in 1830 guarded against sale in such case.—*Tit. 3, Pt. 3, Art. 1, ch. 9, § 30; Delafield v. Sandford, 3 Hill, 473.* Still, when the process was fully executed, as in case of arrest on *ca. sa.*, the English rule was adhered to, that there was no supersedeas to discharge the party from custody.—*Sherrill v. Campbell, 21 Wend., 287.*

I will now quote the provisions of our statute which apply directly. They are contained in three sections of *ch. 227, C. L.,* entitled "writs of error and *certiorari.*"

§ *7120.* "No writ of error shall operate to stay or supersede the execution in any civil action, unless the plaintiff in error, with two sufficient sureties, or three sufficient sureties without the plaintiff in error, shall give bond to the defendant in error, with condition that the plaintiff in error shall prosecute his writ to effect, and shall pay and satisfy such judgment as shall be rendered against him thereon."

§ *7121.* "The sufficiency of the sureties and the sum for which the bond shall be given, shall be determined in each case by any justice of the supreme court or circuit court commissioner; but the penalty of such bond shall not be less than double the amount of the judgment upon which the writ of error is brought, if such judgment be against the plaintiff in error, nor in any case less than one hundred dollars."

§ *7122.* "The bond, if any be given, shall be filed in the office of the clerk of the court in which the judgment was rendered, at the time of serving the writ on such clerk, and notice thereof shall be given to the defendant in error, or his attorney, and no execution shall thereafter be issued upon the judgment complained of, during the pendency of the writ of error; and if any execution shall have been issued, all further proceedings thereon shall be stayed, upon the officer holding such execution being served with a certificate of the service of such writ, and the filing of such bond, signed by the clerk with whom such bond shall be filed."

These provisions ought not to be read as abstract propositions. They take for granted certain previously settled and understood conditions in regard to the nature and operation of a writ of error, and in order to perceive their real import and application it is needful to consult the system where those conditions were settled, and to which system our own regulations owe their origin. We should also keep in mind the state of our law in regard to what may be taken on final process, and our various and peculiar provisions respecting the execution of such process in special cases. As was

BLAIR v. COMPTON.

well observed in *Glenn v. Bank of the United States, 8 Ohio (Hammond), 72, 80:* "As every statute, at the same time that it professes to ordain a new rule, contains also a recognition of a great variety of old ones, by the assistance of which we are alone able to understand and interpret it; it becomes necessary to look both in and out of the statute whenever any controversy arises demanding a construction of it." In substance, the sections I have quoted are very similar to the provisions quoted by *Tidd*, and I see nothing to cause a difference of practice in regard to the right and duty of a sheriff to go on and sell such personalty (when no other conditions are in the way) as he may have fully levied on at the time of the attachment of the stay caused by the proceedings in error. And on the other hand, there seems to me to be special reasons here, beyond what exist in England, for such a course. And these reasons are seen in the almost insuperable difficulties to ensue from a contrary practice, on account of the character of much of our leviable personalty, and the nature of many of our regulations in regard to the subjection of such personalty. Our statute makes no express mention of a case where a levy has been already made, or of a case where the act of levy has only been entered upon. It forbids the issue of execution while the writ of error is pending, and stays, without express limit as to time, all further proceedings on an execution which has been previously issued. The language is broad, but without strong reason it should not be applied as extensively as the words will admit, contrary to the long settled practice under the provisions from which in substance our own were derived, and when to do so, moreover, must cause many serious embarrassments on account of specific peculiarities before noticed.

Then, again, a literal construction would cause the writ of error to operate as a perpetual stay, even in case of a full levy, since the terms, as before mentioned, contained no limit to it. It is likewise material to notice in this connection, that it is expressly enacted that goods and chattels shall be only bound from the time of levy, and not from an

act towards a levy and not amounting to one.—§ *6091, C. L.* The provision as to stay may be well satisfied by restricting the operation of the stay to an outstanding *fi. fa.*, where no levy at all has been fully made, and as in England, precluding it from attaching in respect to a levy already complete on personalty. Under such construction the execution of the *fi. fa.*, already begun by perfect levy on specific items, can, if nothing else is in the way, be carried out to completion as to such items by sale thereof and payment of the proceeds into court. As to other items no execution would be begun, and as to them the *fi. fa.* would stand absolutely arrested. The English regulations had no concern with a levy on real property, and in the nature of things the practice must or should be different. There may be no solid ground for saying that such a levy should not stand subject to the stay. In *Green v. Arnold, supra,* the supreme court of Ohio held that a levy on land was not vacated by writ of error and supersedeas; but the point need not be decisively considered now. In the case at bar there was no finished levy at all on any stock when the stay attached, and according to the English rule and the prevailing course in this country the transaction when the stay in error took effect was of no greater force as an execution begun of the *fi. fa.* than would have been a movement of the sheriff for the purpose of levying on goods without levying on any. The sheriff was arrested in his movement before levy was consummated on any thing, before the *fi. fa.* was fastened to any stock.—§ *6091, C. L.* All that had been done was an attempt to levy. And the attempt, as something falling short of a levy, was not a proceeding capable of independent existence as a legal fact, and which, after cessation of stay, could be pieced out by the addition of other facts. It was not good as a levy, and it could not be good as the fraction of a levy. To be recognized as a beginning of execution, the proceeding should be at the least in substance a levy, and not merely a movement towards making one. The law should no more recognize it as an independent legal fact, severed from other acts necessary to create a levy, than i

would divide execution of the *fi. fa.* It must amount in substance to a levy when the stay applies. If it do not, it is a mere circumstance not within legal vision and not apprehensible as a legal fact to stand as so much done once for all. What actually took place did not amount to a merely irregular levy on the stock, and it is plain that it was not understood to be such. If it had amounted to a full levy, then, according to my view, there would have been nothing to stay a sale, and it would have been the sheriff's duty to proceed and sell without unnecessary delay, and return the proceeds. I have confined my attention to the operation of the writ of error and bail, and have not referred to possible occasions for special stays by rule or order. The conclusion is, that the *fi. fa.* ceased to have any operation as against the stock when the proceedings in error attached. If correct in this, it follows, of course, that the order setting aside the sale ought not to be disturbed.

The court being equally divided, the order of the court below was affirmed under the statute.